[Civ. No. 8665.   Second Appellate District, Division Two.—December 9, 1932.]

HAROLD L. MENJOU, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents.

A. L. Abrahams, Frank H. Love and Claude Morton for Petitioner.

Buron Fitts, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondents.

WORKS, P. J.—Petitioner was tried upon a charge of the commission of crime under an information in two counts. The nature of the first count need not be stated, as nothing connected with it is material to the present controversy. The second count charged murder. Under this count petitioner could have been convicted, upon evidence satisfactory to the jury and under the theory of the prosecution, either of murder in the second degree or of manslaughter, or upon a failure of evidence satisfying the jury of his guilt of either crime he could have been acquitted. The jury was so instructed by respondent court and three forms of verdict, drawn in accordance with the instruction, were handed to the trial body upon its retirement for a consideration of the cause. Despite the very plain course thus outlined to its members, the jury used neither of the forms submitted to it but prepared a verdict of its own. This verdict read: "We, the jury in the above-entitled action, find the defendant not guilty of murder, a felony, as charged in count two of the information." The jury brought this verdict into open court and the foreman was asked by the trial judge whether the jury had agreed upon a verdict as to the second count. The foreman answered, "That is what we are uncertain about." This reply precipitated a lengthy colloquy, in which the judge, counsel on both sides, the foreman and one other juror participated. From the colloquy it developed that the jury had agreed, as stated in the verdict, that petitioner was not guilty of murder. Its members then proceeded to discuss and vote upon the question whether he was guilty or innocent of the crime of manslaughter, with the result that upon returning to the courtroom they stood on that question eight for acquittal and four for conviction. Upon statement that an agreement upon the mooted question was not likely, the trial judge set the cause for trial upon a particular date, the sole issue to be tried being

whether petitioner is guilty of manslaughter. The verdict finding him not guilty of murder was filed by the clerk but was not recorded, and the jury was discharged.

This proceeding was instituted for the purpose of procuring an order commanding respondent clerk to record the verdict and requiring respondent court to order the discharge of petitioner.

We are thus confronted with a question as to which counsel agree there exists no exact precedent, and we shall be compelled to unravel the tangled skein mainly by an inspection of the statutes, together with a consideration of such decided cases as may cast any ray of light upon the subject.

It is provided by section 1164 of the Penal Code: ''When the verdict given is such as the court may receive, the clerk must immediately record it in full upon the minutes, read it to the jury, and inquire of them whether it is their verdict. . . . '' The portion of this section that at once impresses itself upon the mind is that which precedes the first comma, but we think a little reflection will convince that the clause ''such as the court may receive'' does not stand in the way of the relief which petitioner prays. Unquestionably the trial judge should not have received the verdict, as it was presented in disobedience of his instructions, not being in any of the forms which alone he told the jury might be used. Under his instructions the only ''not guilty'' verdict which could properly have been returned was a general verdict of not guilty. This the judge seemed in part to realize, for during the colloquy to which we have referred he said to the jury that ''whether or not you have agreed that the defendant did not commit second degree murder, you haven't as yet apparently agreed upon what you are going to do with that second count. It doesn't matter why you haven't agreed; the fact is that you have not come to a common agreement, and therefore there should not be any form of verdict signed upon that second count at all; you are simply disagreed as to that.'' The judge made other remarks to the same general effect. But he did finally receive the verdict, and not only so, but he also gave effect to it, although, as will hereafter appear, the effect was but partial. He said, on this head, after referring to the first count of the information: ''The other matter will have

to be threshed out again. That is, purely as a manslaughter charge. I take it that the verdict of the jury and the statements made must be regarded as an acquittal of the defendant on the charge of murder, still leaving the question of whether he was guilty of manslaughter to be determined. The jury will be discharged from further consideration of the case, with the thanks of the court. When do you want to try the case again? We had better fix the date now." The judge, after a discussion as to dates, then set the cause down for trial, and as he said, "solely upon the question of the guilt or innocence of the defendant as to the crime of manslaughter".

█ Returning to section 1164 of the Penal Code, we think the clause "such as the court may receive" falls to the ground if invoked as a justification of the clerk in his refusal to record the verdict. The verdict was actually received by the court, and so far as the clause in question is concerned the duty of the clerk under the section became fixed. Even if the judge had acted erroneously, he had decided for the court, of which the clerk is but a part, that the verdict was such as the court might receive.

█ This disposition having been made of the clause in section 1164, we must next inquire how the recording of the verdict will affect the rights of petitioner; for if the act will not operate beneficially in his favor he is not entitled to the writ he seeks. Section 1023 of the Penal Code reads: "When the defendant is convicted or acquitted, or has been once placed in jeopardy upon an indictment or information, the conviction, acquittal or jeopardy is a bar to another indictment or information for the offense charged in the former, or for an attempt to commit the same, or for an offense necessarily included therein, of which he might have been convicted under that indictment or information." Is this plain language affected by the fact that the trial judge received the verdict when he should not have received it? Can it be said, because of this action of the judge, that petitioner has not been in jeopardy of the charge of manslaughter, a charge necessarily included in the charge of murder, of which latter charge the verdict received expressly declares him not guilty?

The following statement of the rule that one charged with crime may not twice be put in jeopardy is to be found in an

early case: ''We are . . . of opinion that under our Constitution, which protects a party from a second jeopardy of life, limb, liberty or property for the same public offense, whatever its grade, a person once placed upon his trial before a competent court and jury, charged with his case upon a valid indictment, is in jeopardy, in the sense of the Constitution, unless such jury be discharged without rendering a verdict, from a legal necessity, or for cause beyond the control of the court, such as death, sickness or insanity of some one of the jury, the prisoner of the court, or by consent of the prisoner; and if such jury render a verdict or be discharged before a verdict, without such legal necessity, controlling cause or consent, the prisoner is forever protected from a retrial upon the same or any other indictment for the same offense, unless, at his instance, the verdict be set aside or judgment be reversed . . . '' (*People* v. *Webb,* 38 Cal. 467). This language, in substance, has been employed in later opinions (*People* v. *Hunckeler,* 48 Cal. 331; *People* v. *Smalling,* 94 Cal. 112 [29 Pac. 421]; *People* v. *Ammerman,* 118 Cal. 23 [50 Pac. 15]; *People* v. *Young,* 100 Cal. App. 18 [279 Pac. 824]).

Leaving this general statement of the law concerning second jeopardy, let us now come nearer to the specific question under the glass, that is, does respondent court's improper reception of the verdict deprive petitioner of the claim that he has been once in jeopardy of the charge of manslaughter? In a concurring opinion in *People* v. *Webb, supra,* Justice Sawyer quoted the following from Bishop: 'If, through misdirection of the judge in matter of law, or mistake of the jury or their refusal to obey the instruction of the court, or any other like cause, a verdict of acquittal is improperly rendered, it can never afterward, on application of the prosecutor in any form of proceeding, be set aside and a new trial granted.'' This paragraph, which contains a proper summary of a portion of the opinion in *Ex parte Hartman,* 44 Cal. 32, is to be found in the syllabus preceding the case: ''The trial of a party for a crime, under a sufficient indictment, and by a jury duly impaneled, sworn and charged with the case, nothing having been done upon his part which amounts to a voluntary waiver of his rights, is a complete defense as against any future indictment for the same offense, even if the judgment was arrested

by the court." In *People* v. *Horn*, 70 Cal. 17 [11 Pac. 470], the Supreme Court approved a part of the language of Bishop which was quoted by Justice Sawyer in his concurring opinion in *People* v. *Webb, supra. People* v. *Roberts*, 114 Cal. 67 [45 Pac. 1016], is to the effect that an erroneous acquittal furnishes a basis for the plea of once in jeopardy, and the same is to be said of *People* v. *Terrill*, 132 Cal. 497 [64 Pac. 894]. Further citation of authority on the point would be superfluous. We conclude that petitioner has been once in jeopardy of the charge of manslaughter. Respondent court is therefore without jurisdiction to try him again (*In re Harron*, 191 Cal. 457 [217 Pac. 728]; *In re O'Connor*, 80 Cal. App. 647 [252 Pac. 730]).

Respondent makes the point that petitioner has an adequate remedy in respondent court by way of motion to require the clerk to record the verdict and cannot therefore have the writ of mandate. There are several allegations in the petition for the writ which, taken together, show a threat upon the part of respondent court to try petitioner upon a charge of manslaughter and thus to exercise a jurisdiction which it does not possess. The point is not well taken.

A peremptory writ of mandate will issue as prayed.

Craig, J., and Thompson (Ira F.), J., concurred.