[Crim. No. 21893. Mar. 21, 1983.]

THE PEOPLE, Plaintiff and Appellant, v.
GLORIA ELIZABETH SMITH, Defendant and Respondent.

Counsel

John K. Van de Kamp, District Attorney, Harry B. Sondheim, Donald J. Kaplan and Richard W. Gerry, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Dennis A. Fischer, Laurence M. Sarnoff, Jerry P. Gordon and Leighton A. Nugent for Defendant and Respondent.

Opinion

MOSK, J.—The sole issue to be determined here is whether the People may appeal from a legally erroneous dismissal based on a postmistrial plea of former jeopardy.

Defendant was tried on a charge of murder. (Pen. Code, § 187.) The court instructed the jury on the offenses of second degree murder and voluntary manslaughter, and gave the jury verdict forms of guilty and not guilty for each offense.

After approximately three days of deliberating, the jury reported that it was unable to reach a unanimous verdict disposing of both offenses. The foreman handed the judge a note that stated: "We, the jury cannot arrive to a verdict. We all agree not guilty of murder, in the 2nd degree. [¶] Seven jurors agree to not guilty of voluntary manslaughter and five jurors agree guilty of voluntary manslaughter." The jury left blank all the forms given to it. The judge then briefly questioned the foreman, who disclosed that seven ballots had been taken and that further deliberations would be of no help in reaching a complete verdict. An individual poll of the remaining jurors confirmed the foreman's representations. Accordingly, the judge declared a mistrial, discharged the jury, and set a date for a pretrial hearing on a new trial.

At that hearing defendant moved for a dismissal "in furtherance of justice" (Pen. Code, § 1385) and on the ground of former acquittal. The precise disposition of the matter is in some dispute. The reporter's transcript reveals that the judge granted the motion and remarked: "After listening to the testimony, and after reading that document that was actually signed by the foreman of the jury, even though it was not a verdict form, the Court feels that the defendant will be placed in double jeopardy, and *the case will be dismissed.*" (Italics added.) However, the minute order in the clerk's transcript states: "Case dismissed under Section 1385 Penal Code. Court finds defendant in jeopardy under Section 1023.A [*sic*] Penal Code. The Clerk is ordered to *enter a judgment of acquittal.*" (Italics added.)

The People claim that the quoted excerpts from the reporter's and clerk's transcripts are in conflict, and maintain that the inconsistency must necessarily be resolved in favor of the reporter's version. (*Estate of Caldwell* (1932) 216 Cal. 694, 696 [16 P.2d 139].) But more recent cases do not support such a mechanical rule. The correct approach is outlined in the following passage from *In re Evans* (1945) 70 Cal.App.2d 213, 216 [160 P.2d 551]: "It may be said . . . as a general rule that when, as in this case, the record is in conflict it will be harmonized if possible; but where this is not possible that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence [citation]. Therefore whether the recitals in the clerk's minutes should prevail as against contrary statements in the reporter's transcript, must depend upon the circumstances of each particular case." (See also *People* v. *Blackburn* (1968) 261 Cal.App.2d 554, 558-560 [67 Cal.Rptr. 918], and cases cited; *People* v. *Prochnau* (1967) 251 Cal.App.2d 22, 24-25 [59 Cal.Rptr. 265].)

In the case at bar it does not appear there is an irreconcilable conflict in the record; in our view it is clear that the trial judge dismissed the action solely on the ground of former jeopardy. It is possible that the judge ordered the clerk to enter a "judgment of acquittal" because she believed that to be the proper disposition after a dismissal on double jeopardy grounds.

The People also assert that the judge did not intend to dismiss or acquit on the manslaughter charge; they contend that her ruling was directed only to the murder charge. Even a cursory examination of the record reveals this contention to be without merit. Defendant's written and oral arguments relating to the motion to dismiss emphasized the belief that Penal Code section 1023, as interpreted in *Menjou* v. *Superior Court* (1932) 128 Cal.App. 117 [16 P.2d 1007], constitutes an absolute bar to retrial on lesser included offenses after an acquittal on a charged greater offense; and the judge's remarks disclose that she viewed the jury's note as in effect an aquittal of second degree murder. The citation in the clerk's minutes to section 1023 supports the conclusion that the judge intended to dismiss both charges, not just the murder charge. Furthermore, the prosecutor's arguments impliedly conceded that the case could not be reset for trial on the murder charge; he primarily argued that "this case should properly be set for trial as a manslaughter." The judge's ruling would naturally have disposed of that contention. An objective reading of the record, therefore, supports defendant's claim that the ruling was intended to dispose of both the murder and the manslaughter offenses.

The People's further argument that the ruling is a "nullity" and therefore appealable because the court lacked "jurisdiction" to order an acquittal is not persuasive. "The fact that the act of the trial court was without authority . . . and thus was an act in excess of the trial court's jurisdiction in itself cannot enlarge

the right of appeal by the People." (*People* v. *Godfrey* (1978) 81 Cal.App.3d 896, 901 [147 Cal.Rptr. 9].) Our discussion will be more productive if it focuses on the essential question whether it would be improper to entertain an appeal from the trial court's ruling in the limited circumstances of this case.[1]

■ We turn therefore to the central issue presented, i.e., whether an appeal by the People lies from an order sustaining a plea of former jeopardy after a mistrial has properly been declared. Because the People have no right of appeal except as provided by statute (*People* v. *Drake* (1977) 19 Cal.3d 749, 754 [139 Cal.Rptr.720, 566 P.2d 622]; *People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491, 497 [72 Cal.Rptr. 330, 446 P.2d 138]; *People* v. *Valenti* (1957) 49 Cal.2d 199, 204 [316 P.2d 633]), our analysis must begin with an examination of the text of Penal Code section 1238, to determine whether the Legislature has authorized an appeal in this situation.

Subdivision (a)(8) of section 1238, added in 1968, allows the People to appeal from "An order or judgment dismissing or otherwise terminating the action before the defendant has been placed in jeopardy or where the defendant has waived jeopardy." Identical language is found in Penal Code section 1466, subdivision 1(a), governing the People's right of appeal from the municipal court to the appellate department of the superior court. Thus, it is necessary to consider whether this statutory language may be construed to authorize appeals from postmistrial dismissals.

■ It is well settled that a defendant is considered to be "placed in jeopardy" when he is "placed on trial in a court of competent jurisdiction, on a valid accusatory pleading, before a jury duly impaneled and sworn." (*Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 712 [87 Cal.Rptr. 361, 470 P.2d 345].) This literal definition is, however, inapplicable when a mistrial is declared because of a deadlocked jury. Two alternative rationales suggest that instead, as to that trial, jeopardy will not be deemed to have attached within the meaning of section 1238. (*People* v. *Allen* (1974) 41 Cal.App.3d 821, 824-825 [116 Cal. Rptr. 493]; *United States* v. *Jorn* (1971) 400 U.S. 470, 473-478 [27 L.Ed. 2d 543, 549-552, 91 S.Ct. 547].)

In *Allen,* the defendant was charged in separate counts with attempted murder and the lesser included offense of assault with a deadly weapon. The jury found him not guilty of attempted murder, but was unable to agree on the assault count. The court declared a mistrial as to the lesser offense, discharged the

---

[1]The contention that the ruling resulted in the denial of the People's constitutional right to a jury trial is similarly misdirected. Although we are mindful of the importance of the People's interest in presenting their case to a jury and obtaining a factual determination as to whether they have succeeded in proving their case, that interest cannot supersede established statutory and constitutional principles that bar appellate review of acquittals.

jury, and calendared the matter for a new trial setting. At that hearing the defendant entered a plea of former jeopardy, and the court ruled in his favor. It did not, however, dismiss the action or order an acquittal to be entered. The People appealed from this ruling.

In light of this procedural sequence, the *Allen* court was faced with the identical threshold question presented in the instant case, i.e., is an appeal by the People authorized by statute when the first trial ends in a mistrial because of a deadlocked jury. In considering this preliminary issue the court correctly focused first on whether the defendant had been placed in jeopardy. The court answered this question in the negative, reasoning that "the effect of the mistrial is that jeopardy has never attached." (*Id.* at p. 825.)[2] The *Allen* court correctly relied on established case law which has "repeatedly held that where a jury is discharged for failure to reach a verdict, jeopardy does not attach because the law places the parties back in status quo as if no trial had ever occurred." (*People* v. *Wheeler* (1971) 23 Cal.App.3d 290, 311 [100 Cal.Rptr. 198], disapproved on other grounds in *People* v. *Wheeler* (1978) 22 Cal.3d 258, 286-287 [148 Cal.Rptr. 890, 583 P.2d 748]; accord, *Magee* v. *Superior Court* (1973) 34 Cal.App.3d 201, 217 [109 Cal.Rptr. 758]; *People* v. *Doolittle* (1972) 23 Cal.App.3d 14, 22 [99 Cal.Rptr. 810]; see also, *People* v. *Crooms* (1944) 66 Cal.App.2d 491, 499 [152 P.2d 533]; *People* v. *Messerly* (1941) 46 Cal.2d 718, 721 [116 P.2d 781].) ■ ■■ ■■ Having thus determined that the defendant had not been placed in jeopardy and that the ruling was therefore appealable, the court proceeded to consider the merits of the double jeopardy claim.[3]

---

[2]The court's reliance (*id.* at pp. 824, 825, fn. 4) on *United States* v. *Castellanos* (2d Cir. 1973) 478 F.2d 749, is somewhat troubling, however, because the federal statute discussed in *Castellanos* differs significantly from the statute at issue here. *Castellanos* involved a prosecution appeal from a dismissal based on a postmistrial plea of former jeopardy. However, the controlling federal statute in *Castellanos* expressly authorized the government to appeal from any dismissal order "except . . . where the double jeopardy clause of the United States Constitution prohibits further prosecution." (18 U.S.C. § 3731.) *Castellanos* concluded that under this statute the appealability issue and the merits of a double jeopardy claim involved the same question; i.e., whether the government could retry the defendant. (*Id.* at p. 751.) Given the difference between the California statute and the federal statute, the reasoning of *Castellanos* is not relevant to the case at hand nor was it applicable in *Allen*.

[3]*People* v. *James* (1980) 102 Cal.App.3d 108 [162 Cal.Rptr. 548], involved a dismissal after the jury had deadlocked on one of two counts. In a subsequent prosecution on the dismissed count, the defendant's plea of once in jeopardy was sustained and the People appealed. In considering the appealability of this dismissal, the court misinterpreted *Allen* by concluding that "the jurisdictional question of the existence or nonexistence of the People's right to appeal is determined by the resolution of the double jeopardy issue which is the substantive issue in dispute." (*Id.* at pp. 110-111.) Of course, the proper procedure is to consider first the preliminary question whether the defendant was placed in jeopardy. Pursuant to Penal Code section 1238, subdivision (a)(8), the merits of the appeal may be reached only if it is determined that jeopardy did not attach. To the extent *James* is inconsistent with this reasoning, it is disapproved.

■ An alternative rationale for holding that jeopardy has not attached when a mistrial is declared because of a jury deadlock is suggested by *United States* v. *Jorn, supra,* 400 U.S. 470. In *Jorn,* the United States Supreme Court construed a former federal statute almost identical to our section 1238 as permitting a government appeal from a dismissal based on a postmistrial plea of former jeopardy. (Former 18 U.S.C. § 3731 [government appeals permitted "when the defendant has not been put in jeopardy"].)[4] The court reasoned that the "jeopardy" mentioned in the appeal statute referred forward in time to the upcoming retrial, not back to the original trial. Thus, "the sustaining of a motion in bar based on a plea of former jeopardy [was] appealable as long as the motion in bar was sustained prior to the impaneling of the jury in the subsequent proceeding." (*Jorn, supra,* at p. 477 [27 L.Ed.2d at p. 552].) This construction of the former federal law is reasonable and provides additional persuasive support for the prosecution's right to appeal under the similar California statute.

■ Here, respondent moved to dismiss the manslaughter accusation after the jury failed to reach a verdict on that charge but prior to the commencement of a retrial. Applying the reasoning of *Allen,* we conclude that the effect of the mistrial was to nullify the original attachment of jeopardy, and thus the dismissal was appealable. We reach an identical conclusion under the *Jorn* reasoning: i.e., because a jury had not yet been impaneled in the second proceeding, jeopardy had not attached and the dismissal was therefore appealable. Thus, although they travel by different analytical routes, both lines of authority lead us to the conclusion that the relevant statutory language permits an appeal by the People in the circumstances of this case.

■ Proceeding to the merits of defendant's double jeopardy claim, we reach the ultimate question whether the partial verdict of acquittal on the charged greater offense of second degree murder prevents a retrial of defendant on the uncharged lesser included offense of manslaughter. Our decision in *Stone* v. *Superior Court* (1982) 31 Cal.3d 503 [183 Cal.Rptr. 647, 646 P.2d 809], resolved that question during the pendency of this appeal. We there held that neither constitutional considerations nor Penal Code section 1023 erect a barrier to a second trial for an uncharged lesser included offense as to which the jury was deadlocked, even if the jury acquitted the defendant of a charged greater offense. (*Id.* at pp. 520-522.) We expressly disapproved an early Court

---

[4]As noted in footnote 2, *ante,* this statute was subsequently amended to make the scope of the federal appealability statute coextensive with the scope of the constitutional protection against double jeopardy. (Omnibus Crime Control Act of 1970 (Pub.L. No. 91-644 (Jan. 2, 1971) 84 Stat. 1890); *United States* v. *Scott* (1978) 437 U.S. 82, 84-86 [57 L.Ed.2d 65, 69-71, 98 S.Ct. 2187]; *United States* v. *Wilson* (1975) 420 U.S. 332, 337 [43 L.Ed.2d 232, 237-238, 95 S.Ct. 1013]; *United States* v. *Castellanos, supra,* 478 F.2d 749, 751; Note, *Government Appeals of "Dismissals" in Criminal Cases* (1974) 87 Harv.L.Rev. 1822, 1827, fn. 33.) Thus, federal case law under the new federal statute is no longer useful in interpreting the California statute.

of Appeal decision to the contrary, a case on which defendant relied in her arguments below. (*Menjou* v. *Superior Court, supra,* 128 Cal.App. 117.) The holding of *Stone* is fully controlling here.

The "judgment of acquittal" is reversed and the cause remanded for further proceedings consistent with this opinion.

Bird, C. J., Richardson, J., Kaus, J., Broussard, J., Reynoso, J., and Abbe, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.