Filed 11/12/15  P. v. Ferdinand CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>EDWARD D. FERDINAND,<br><br>        Defendant and Appellant. | A143577<br><br>(San Francisco County<br>Super. Ct. No. 216124) |

In this case, appellant seeks reversal of his conviction for possession of a large-capacity magazine for a firearm (count 4).  He argues the statute operative at the time of his commission of the crime, former Penal Code section 12020, subdivision (a)(2),[1] did not penalize mere possession of such a magazine.  Specifically, he contends the evidence was insufficient to convict him under this statute because the government failed to present any evidence he committed the conduct prohibited by the statute, and the jury was incorrectly instructed possession of the magazine was sufficient to sustain a conviction under the statute.  The Attorney General acknowledges the evidence is insufficient to sustain a conviction under former section 12020, subdivision (a)(2), and, consequently, that conviction must be reversed.  The Attorney General also contends there must be a modification of the sentencing minute order to conform it with the trial court's oral pronouncement on count 5. We agree and otherwise affirm the judgment.

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

**STATEMENT OF THE CASE**

On August 5, 2011, the District Attorney of San Francisco filed an information charging appellant with felony possession of a firearm as a convicted felon, in violation of former section 12021, subdivision (a) (now section 29800, subdivision (a)(1) and count 1); felony concealment of a firearm in his vehicle as a felon, in violation of former section 12025, subdivision (a) (now section 25400, subdivision (a)(1) and count 2); felony carrying a loaded firearm in public as a felon, in violation of former section 12031, subdivision (a) (now section 25850, subdivision (a) and count 3); felony manufacturing, importing, giving, lending or possessing for sale a large-capacity magazine, in violation of former section 12020, subdivision (a)(2) (now section 32310 and count 4); felony possession of a firearm while being prohibited from doing so by a restraining order, in violation of former section 12021, subdivision (g)(2) (now section 29825, subdivision (b) and count 5); misdemeanor driving under the influence, in violation of Vehicle Code section 23152, subdivision (a) (count 6); and misdemeanor driving with a blood-alcohol level of at least .08 percent, in violation of Vehicle Code section 23152, subdivision (b) (count 7).

On September 25, 2014, a jury found appellant guilty of counts 1 through 6 and not guilty of count 7. On November 7, 2014, the trial court suspended imposition of sentence and placed appellant on three years' probation with respect to count 2, with one of the conditions of probation being that appellant serve nine months in the county jail. Regarding counts 1, 3, and 4, the trial court ordered the "same sentence," but stayed the sentences. The trial court also ordered the "same sentence" regarding count 5, with the additional feature that the jail time connected with that count include only 100 days in custody.[2] The trial court also sentenced appellant to 30 days in the county jail on count 6, to run concurrently with his sentence on count 2.

---

[2] The clerk's minutes indicate the county jail time was 90 days on count 5.

On November 13, 2014, appellant filed a timely appeal.

## STATEMENT OF FACTS

On June 14, 2010, at approximately 11:13 p.m., San Francisco police officers Zeltser and Barranco were on routine patrol in the Bayview district of San Francisco. They each observed a car illegally turn through a stop sign without initially stopping. The police ordered the car to pull over for a traffic stop.

Officer Zeltser exited his car and approached the driver's window, noting appellant was in the driver's seat. The officer detected the odor of alcohol and saw appellant had bloodshot eyes and slurred speech. Zeltser believed appellant was under the influence and asked him to engage in certain field sobriety tests. Before commencing the tests, appellant told the officer he had consumed two beers a few hours before, had recently taken blood pressure medicine, had problems with his balance and eyes, and possibly took Vicodin.

As appellant exited his car, the officer saw his gait was unsteady. Based on his performance of the field sobriety tests, the officer concluded appellant was under the influence. Therefore appellant was arrested.

Before the car was towed pursuant to department policy, Officer Barranco engaged in an inventory search of the vehicle. During this procedure, the officer found in the trunk an operable Glock handgun with a partly loaded 30-round magazine attached. This would be three times the size of a Glock standard 10-round magazine. Crime scene investigator Anthony Gomes swabbed the gun's handgrip for collection of any DNA samples. Sergeant Daniel Cole took DNA from appellant. Finally, San Francisco criminalist Nicole Walicki compared the handgun sample of DNA with the sample taken from appellant and found the probability the two DNA samples came from a person other than appellant to be less than one in 200 billion.

Approximately 90 minutes after he was stopped, a blood draw was taken from appellant at the jail to determine blood-alcohol level. The results were a reading of .07

3

percent. If appellant had stopped drinking around 9:00 p.m., his blood-alcohol level at the time of the actual draw would have suggested that when he was stopped, his blood-alcohol level was .09 percent.

Appellant testified at the trial. He represented he had taken Valium and Vicodin for back pain on June 14, 2010. He also stated he had balance issues. He only had one beer on the night of his arrest. He drank it around 10:45 p.m. He denied ever possessing or handling the Glock handgun. The car he was driving was a rental and he had never opened the trunk where the weapon was located. He had also permitted others to drive the car, since he had been renting the vehicle for several weeks.

## DISCUSSION

When the information in this case was filed in 2010, count 4 correctly stated the language of former section 12020, subdivision (a)(2). It alleged appellant had "willfully and unlawfully manufactured, caused to be manufactured, imported into the state, kept for sale, offered and exposed for sale, gave and loaned a large-capacity magazine." However, when the trial began in 2014, both sides realized the firearm charging statutes had all been renumbered in 2012. Consequently, each side was unsure whether to amend the information to conform to that new numbering system. [3]

The prosecutor decided to not change the numbers in the counts of the information. After discussion with the court, counsel decided to use CALCRIM instructions authored in 2014. Regarding count 4, the count challenged in this appeal, it appears defense counsel suggested the court use CALCRIM No. 2500, which he described as a "generic ban on prohibited weapons." The district attorney agreed with this approach, as did the court.

_____

[3] The new numbering system is identified in the various counts listed in the Statement of Case portion of this opinion.

The confusion was compounded when the district attorney stated in closing argument the crime in count 4 consisted of the "illegal possession of a large capacity magazine." The jury was further advised by the court that the possession of the magazine in evidence was sufficient to sustain a conviction for count 4, and this was further stated in the written instruction given the jury in their deliberations. Finally, the verdict form signed by the jury foreman indicated appellant was "guilty of violating Penal Code Section 12020(a)(2), in that the defendant willfully and unlawfully *possessed* a large capacity magazine." (Italics added.)

Importantly, former section 12020, subdivision (a)(2) imposes criminal liability on anyone who "manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, or lends, any large-capacity magazine." The statute does not proscribe possession of a large-capacity magazine as a criminal offense. Furthermore, commentary for CALCRIM No. 2500 expressly states "[i]t is not unlawful to possess a large-capacity magazine . . . ." While the trial court used CALCRIM No. 2500 at the suggestion of trial counsel, it apparently did not review the comments to the instruction on its application.

We believe the evidence demonstrated appellant did possess a large-capacity magazine. Argument by the prosecutor as well as the court's instructions and the jury verdict form advised the jury expressly that *possession* of a large-capacity magazine sufficed for a conviction on count 4. There was simply no evidence presented for a rational jury to conclude the magazine appellant had was possessed with the intent to sell, or was manufactured or was brought into this state by him. Absent such evidence in the record, the conviction for count 4 must be reversed.

Additionally, at sentencing, the trial court designated count 2, concealment of a firearm in a vehicle by a convicted felon, as the principal term and suspended the imposition of sentence on that count. One of the conditions of probation on that count was that appellant serve nine months in the county jail. The trial court then ordered

5

appellant to serve the "same . . . sentence" with respect to counts 1, 3, and 4, but stayed those sentences. The court then declared "the sentence for Count 5 is the same as the one pronounced in Count 2, except that the defendant shall serve 100 days in the county jail." The court then "stayed" the sentence on count 5 as well. The court also sentenced appellant to 30 days on count 6, the time to run concurrently with the sentence on count 2.

The minute order from this sentencing hearing follows these oral statements exactly—except the minute order indicated the jail time on count 5 was *90* days, not *100* days.

Controlling precedent establishes the record of the oral pronouncement by the court as to the length of a county jail sentence imposed as a condition of probation controls over the clerk's minute order. (*People v. Farell* (2008) 28 Cal.4th 381, 384, fn. 2, citing *People v. Mesa* (1975) 14 Cal.3d 466, 471, but see *People v. Smith* (1983) 33 Cal.3d 596, 599.) Therefore, the minute order in this case should be amended to indicate the actual jail time associated with count 5 is 100 days instead of 90 days. Other than this correction, we see no additional corrections are needed regarding the sentences in this appeal.

## CONCLUSION

We reverse the conviction of appellant as to count 4. We direct the minute order concerning appellant's sentence be amended as to count 5 to indicate a jail term of 100 days associated with his probation sentence.

## DISPOSITION

The judgment as to count 4 is reversed. The trial court is directed to amend its minute order to reflect the 100-day jail term imposed in its oral prononcement on count 5. In all other respects the judgment is affirmed.

6

_____
DONDERO, J.

We concur:

_____
HUMES, P.J.

_____
MARGULIES, J.

A143577