Filed 2/13/25  In re M.V. CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re M.V., a Person Coming Under the Juvenile Court Law. | |
| SAN FRANCISCO HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>N.V.,<br><br>        Defendant and Appellant. | A169985, A170619<br><br>(San Francisco City & County<br> Super. Ct. No. JD22-3058) |

N.V. (mother) appeals from the juvenile court's written exit orders, contending they do not conform to the court's oral pronouncements as reflected in the reporter's transcript.  We conclude the oral pronouncements, which conflict with the written exit orders regarding mother's responsibility to pay for visitation, control.  Accordingly, we remand for the juvenile court to make corrections and, otherwise, we affirm the challenged orders.

1

# I. BACKGROUND[1]

In February 2022, the San Francisco Human Services Agency (Agency) filed a dependency petition pursuant to Welfare and Institutions Code[2] section 300 with respect to M.V. (minor). (*In re M.V.* (Sept. 13, 2023, A166101, A166502) [nonpub. opn.].) In September 2023, the Agency filed the operative supplemental dependency petition pursuant to section 342, alleging jurisdiction pursuant to section 300, subdivisions (b)(1) and (c). Between November 2023 and February 2024, the juvenile court conducted a contested hearing on, among other matters, the section 342 petition.

At the final hearing on February 16, 2024 (hearing), the juvenile court ordered sole legal and physical custody of minor to J.M. (father) with supervised visitation to mother, dismissed the petition, and terminated dependency jurisdiction. Regarding mother's visitation, the court ordered, "The visitation will be two supervised visits per week. . . . The visits will be through Rally [Family Visitation Center]. The mother, for the first 12 visits, must pay 100 percent to make up for the missed visits. While there were approximately 16, quote, 'missed visits,' some were because the young person was sick or the mother was sick or there was a transportation issue with the Agency. That's why the Court is not ordering all 16 [visits]. The Court is ordering the first dozen to be paid 100 percent by the mother, none by the father. [¶] . . . [¶] . . . After the 12 visits, then it will go 50/50." Minor's counsel agreed to prepare the written exit orders.

---

[1] It is unnecessary to detail the procedural and factual background leading to the juvenile court's final disposition to resolve the discrete issues raised on appeal.

[2] Undesignated statutory references are to the Welfare and Institutions Code.

At the hearing, the juvenile court also commented on the potential for mother to seek modification of the visitation orders. The court stated, "If and when the matter comes back . . . after June 1, 2024, if the mother provides proof of her continued [therapy] services . . . , that would be a basis for a judge to then modify the visitation orders." The court clarified the June 1 date was "not a deadline." The court was merely "suggesting" that if the matter returned to court, the reviewing judge "should not modify any of my orders before June 1." "It will still be up to the independent bench officer to use their judgment." The court explained it was just making "suggestions or putting things on the record" to provide context for a bench officer considering a potential future request to modify the visitation orders.

Following the hearing, the juvenile court prepared a visitation order and filed it on February 20, 2024. As relevant here, the order awarded mother one-hour visits, twice a week, with mother responsible for 100 percent of the payment "for first 12 visits" and, after that, each parent was responsible for 50 percent of the payment.

Additionally, as instructed, minor's counsel prepared a form custody order. The juvenile court signed the order and filed it on February 28, 2024. As to visitation the order stated, "Mother be provided two supervised visits a week at Rally Family Visitation Center. Mother will pay 100% of the fees for the first twelve *weeks*, thereafter the fees will be split evenly between the parents." (Italics added.) A form attachment to the custody order indicating the reasons for supervised visitation explained mother was allowed only supervised visitation because she had not made substantial progress in individual counseling and because, in 2022, she had absconded with minor and left the country for many months in violation of a court order. "This history, in conjunction with her ongoing mental health struggles, support

3

supervised visitation in order to assure that she does not violate the current custody orders."

On May 16, 2024, an amended form custody order, also prepared by minor's counsel, was filed. This order corrected minor's date of birth. In all respects relevant here, the May 16, 2024 order was identical to the February 28, 2024 order.[3] It included language requiring mother to pay 100 percent of the visitation fees "for the first twelve *weeks*." (Italics added.) Neither order contained information documenting the juvenile court's remarks made at the hearing regarding mother returning to court to modify the orders. The February 28, 2024 order and the May 16, 2024 order (collectively, written exit orders) were signed by different judges, neither of whom presided over the hearing.

## II. DISCUSSION

Mother does not challenge the juvenile court's dispositions orally pronounced at the hearing. Instead, she challenges the written exit orders[4] to the extent they (1) direct her to pay for 12 *weeks* of visitation, and (2) are silent regarding her opportunity to return to court to modify the visitation orders. She argues the written exit orders substantively modified the court's oral rulings and, therefore, notice and a hearing were required.[5]

---

[3] In addition to correcting minor's date of birth, the May 16, 2024 order removed the child abduction prevention mandate which box had been checked in the prior order. Mother raises no issue on this topic.

[4] In her notice of appeal, mother appealed from the findings and orders of the court on February 16, 2024—the date of the hearing. She did not identify the February 28, 2024 order. We construe the notice of appeal broadly to include challenges to the February 28, 2024 order. (See Cal. Rules of Court, rule 8.100(a)(2).)

[5] The Agency filed a letter brief explaining that it has no stake in the outcome of these appeals and it did not intend to file a respondent's brief. We

"When a juvenile court terminates its jurisdiction over a dependent child, it is empowered to make 'exit orders' regarding custody and visitation. (§§ 364, subd. (c), 362.4; . . . .) Such orders become part of any family court proceeding concerning the same child and will remain in effect until they are terminated or modified by the family court." (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122–1123.)

Where there is a conflict between the juvenile court's statements in the reporter's transcript and any written orders appearing in the clerk's transcript, we presume the reporter's transcript is the more accurate. (*In re A.C.* (2011) 197 Cal.App.4th 796, 799–800.) However, this presumption is not absolute, and whether the reporter's transcript prevails over conflicting written orders " 'must depend upon the circumstances of each particular case.' " (*People v. Smith* (1983) 33 Cal.3d 596, 599; see also *In re Karla C.* (2010) 186 Cal.App.4th 1236, 1259, fn. 9.)

The juvenile court's written exit orders conflict with its oral disposition at the hearing regarding payment for visitation. The court granted mother two supervised visits per week. The reporter's transcript shows the juvenile court ordered, "mother, for the first 12 visits, must pay 100 percent." The written exit orders, on the other hand, ordered, "Mother will pay 100% of the fees for the first twelve weeks." Paying for 12 visits and paying for 12 weeks, with two visits per week, is not the same. Accordingly, we reject father's unreasonable contention that the oral and written rulings "are identical."

Considering the record, we conclude the juvenile court's oral pronouncement controls. (See *In re A.C., supra,* 197 Cal.App.4th at p. 800;

appointed counsel for father who subsequently filed a respondent's brief urging us to affirm.

5

*People v. Smith*, *supra*, 33 Cal.3d at p. 599.) At the hearing, the court explained that mother was required to pay 100 percent of the visitation fees for the first 12 visits "to make up for" prior missed visits. The court ordered payment for 12 visits, even though 16 visits were missed, reasoning that some of the missed visits "were because the young person was sick or the mother was sick or there was a transportation issue with the Agency. That's why the Court is not ordering all 16 [visits]. The Court is ordering the first dozen to be paid 100 percent by the mother." Clearly, the court ordered mother to pay based on the number of visits, not the number of weeks. Additionally, the oral pronouncement controls because the written orders are themselves inconsistent. The visitation order the court prepared and filed on February 20, 2024 tracked the court's oral ruling and directed that mother was responsible for 100 percent of the payment "for [the] first 12 visits." The challenged written exit orders, on the other hand, were prepared by minor's counsel and were signed by two different judges, neither of whom had presided over the hearing. Accordingly, we direct the juvenile court on remand to correct the written exit orders so they are consistent with the court's oral pronouncement regarding mother's responsibility to pay for the first 12 visits. (See *In re A.C.*, at p. 800 [remanding for juvenile court to correct the exit order to be consistent with the oral visitation order].)

To the extent mother asserts that the May 16, 2024 order extended her obligation to pay by an additional 12 weeks from the filing of that order—which occurred more than 12 weeks after the hearing—we reject her assertion. Mother cites neither record evidence nor legal authority demonstrating that the filing of such order restarted her obligation to pay visitation fees. (See *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287 ["In order to demonstrate error, an appellant must supply the

6

reviewing court with some cogent argument supported by legal analysis and citation  to the record."]; see also *id.* at p. 287 ["we may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions [she] wants us to adopt"].)

Mother also contends the written exit orders do not correctly reflect the juvenile court's oral pronouncements because they contain no information about her opportunity to seek modification of the orders if she continued to engage in therapeutic services.  While her description of the content of the written exit orders is accurate, she has not demonstrated any error requiring modification.  The reporter's transcript demonstrates that the juvenile court's statements were not an order.  Rather, the court merely remarked that if the matter was put on calendar after June 1, 2024 because mother had provided proof of her continued therapy services, it "would be a basis for a judge to then modify the visitation orders."  The court explained the June 1 date was "not a deadline."  The court was merely making a "suggestion" to the judicial officer that may review a future modification request.  Mother cites no authority to demonstrate that the court's remarks constituted a ruling, the terms of which must have been included in the written exit orders.  (See *City of Santa Maria v. Adam, supra,* 211 Cal.App.4th at pp. 286–287.)  Should mother's circumstances change, she may seek to modify the visitation orders in the family court.[6]  (See *In re Rashad D.* (2021) 63 Cal.App.5th 156, 165, fn. 7.)

---

[6] Whether mother is entitled to appointed counsel for any potential hearing regarding modification of the juvenile court's orders is an issue for the family court and, therefore, we do not address mother's request for counsel.

Having determined that the written exit orders need to be corrected to conform to the juvenile court's oral pronouncements regarding payment for visitation, we need not address mother's contention that her due process rights were violated because she was not provided with notice and an opportunity to be heard on the contents of the orders. Mother and her then-counsel[7] received notice of and attended the hearing during which the issue of payment for visitation was discussed. The written exit orders will be corrected to conform to the court's oral pronouncements at the hearing. In her reply brief, mother clarifies that all she "has requested is a complete and final order in this matter that comports with the oral instructions of the trial judge." We have addressed her request.

### III.   DISPOSITION

We remand for the juvenile court to correct the written exit orders to conform to the court's oral pronouncement that mother was required to pay 100 percent of the visitation fees for the first 12 visits. In all other respects, the written exit orders are affirmed.

---

[7] Mother was no longer represented by counsel when the February 28, 2024 order and the May 16, 2024 order were filed.

8

LANGHORNE WILSON, J.


WE CONCUR:


HUMES, P. J.


SMILEY, J.*


A169985, A170619
*In re M.V.*

---

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article IV, section 6 of the California Constitution.

9