Filed 4/23/25  P. v. Moyer CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C100909 |
| Plaintiff and Respondent, | (Super. Ct. No. PR933090) |
| v. | |
| KENNETH RUSSELL MOYER, | |
| Defendant and Appellant. | |

Defendant Kenneth Russell Moyer appeals the trial court's denial of his petition for resentencing under Penal Code section 1172.6.[1]  Counsel for Moyer filed a brief seeking our independent review under *People v. Delgadillo* (2022) 14 Cal.5th 216 to determine whether there are any arguable issues on appeal.  Moyer filed a supplemental brief arguing he presented a prima facie case demonstrating he was entitled to relief

---

[1]  Undesignated statutory references are to the Penal Code.

under section 1172.6. He takes issue with the jury's conclusion he was a beneficiary on his wife's insurance policy, his counsel's failure to properly litigate this issue at his first trial, and argues his appellate counsel's conclusion he is ineligible for relief under section 1172.6 constituted ineffective assistance of counsel.

We requested supplemental briefing on whether any error the trial court may have made in finding Moyer failed to make a prima facie showing of entitlement to relief under section 1172.6 based solely on the allegations of the information and the jury verdicts was prejudicial in light of the entire record of conviction. We will affirm.

## BACKGROUND

The information charged Moyer with murder (§ 187, subd. (a)), conspiracy to commit murder (§§ 182, subd. (a)(1), 187, subd. (a)), insurance fraud (§ 550), and attempted escape while felony charges are pending (§ 4532, subd. (b)). The information further alleged the special circumstance that the murder was committed for financial gain. (§ 190.2, subd. (a)(1).)

The facts of the underlying offense are set forth in the appellate opinion from Moyer's prior appeal. (*People v. Moyer* (Aug. 30, 1996, C019477) [nonpub. opn.] (*Moyer*).)[2] Succinctly stated, in this case, a "[w]ealthy widow marries [an] unfaithful man who takes financial advantage of her, leading to her murder." (*Ibid.*)

Moyer met the victim in 1983, began dating her in 1991, and married her in 1992. He also maintained a dating relationship with a second woman during this time. Prior to dating Moyer, the victim's first husband died in an air crash and the victim received a substantial legal settlement. Moyer told an associate the marriage came with a one-year guarantee: If he was not happy in a year, he would leave the marriage with $1 million.

_____

[2] On our own motion we incorporate the prior opinion into the record by reference. Our recitation of the facts from our prior appellate opinion is solely for the purpose of efficiently summarizing the background of this case. We do not rely on these facts in resolving the issues raised in this appeal. (§ 1172.6, subd. (d)(3).)

(*Moyer*, *supra*, C019477.) Shortly after the start of their marriage, Moyer shared his plans with Ross, a former employee who was in prison. The two discussed whether Ross would kill the victim for Moyer when he was released from prison in 1992 by breaking her neck. Ross was denied release. (*Ibid*.)

In September 1992, Moyer and the victim each took out $180,000 life insurance policies. Each policy required a physical examination. Moyer was the beneficiary of the victim's policy. (*Moyer*, *supra*, C019477.) Meanwhile, the victim asked a friend to check the ownership records of two condominiums that Moyer claimed to own. During a phone call, Moyer admitted to one of the victim's friends that there were discrepancies in his representations about his ownership. (*Ibid*.) The day after that phone call, the victim completed her physical examination, and her life insurance policy became effective. Later that evening, a passing motorist reported seeing a car plunge down an embankment. The motorist found the victim dead in the driver's seat, covered in dried blood. Mitch McLees was semiconscious in the passenger seat but suddenly became alert when paramedics attempted to intubate him. He had no internal injuries and only a small cut. (*Ibid*.)

A pathologist determined that the victim did not die in the car accident but rather died from a broken neck. Another expert testified that her injury was consistent with a "rear stranglehold takedown." Thirteen years before the murder, one of Moyer's employees had shown him a similar technique at his request. (*Moyer*, *supra*, C019477.)

McLees testified that he was working in the couple's garage the night of the murder. When Moyer called out to him, he came into the house and found Moyer standing over the victim's body. Moyer told McLees that he had already killed the victim and instructed him to drive somewhere and stage an accident. When McLees refused, Moyer threatened to tell the police that McLees had killed the victim and also threatened his family and fiancée. McLees ultimately agreed to help and placed the victim in the driver's seat of his car. However, McLees's cellmate later testified that McLees claimed

3

he had an affair with the victim and was the one who killed her.  (*Moyer*, *supra*, C019477.)

After the murder, Moyer hired workers to scrape grout from the tiles in his home's entryway, explaining that he had spilled cherry cough syrup on them.  However, when investigators analyzed the grout, they found the victim's blood.  (*Moyer*, *supra*, C019477.)  Moyer also asked an employee of the subdivision where he lived to claim that he had seen the victim and McLees at a particular intersection at 7:30 p.m. on the night of the murder and that both appeared to be in good health.  Moyer assured the employee that he would take care of him financially.  When Moyer later learned that the employee did not provide that information, he asked him to retract his statement and instead tell the police that he had seen the victim alive at 7:30 p.m. on the night of her death.  (*Ibid*.)

McLees was separately convicted of first degree murder of the victim for financial gain and insurance fraud.  (*Moyer*, *supra*, C019477.)  The jury convicted Moyer of murder (§ 187), conspiracy to commit murder (§§ 182, subd. (a), 187, subd. (a)), and insurance fraud (§ 550).  The jury also found true the special circumstance that the murder was committed for financial gain.  (§ 190.2, subd. (a)(1).)[3]

---

[3]  The record contains conflicting information as to the jury's finding on the special circumstance the murder was committed for financial gain.  (§ 190.2, subd. (a)(1).)  The clerk's minutes state the jury found this special circumstance not true.  This court granted the People's motion to augment the record to include the reporter's transcript of the verdict and the actual jury verdicts.  Both of these items state the jury found the special circumstance true.  In light of (1) the signed verdict forms; (2) the fact the clerk read the verdict the same way when reporting it out and a second time when polling the jury; and (3) the record reflects no objection from counsel, we conclude the reporter's transcript and signed jury verdict forms are the more accurate rendition of the jury's verdict.  (See *People v. Smith* (1983) 33 Cal.3d 596, 599 [" 'It may be said . . . as a general rule that when, as in this case, the record is in conflict it will be harmonized if possible; but where this is not possible that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence [citation].  Therefore whether the recitals in the clerk's minutes should prevail as against contrary statements in the reporter's transcript, must depend upon the circumstances of each particular case.' "].)

The trial court sentenced Moyer to life without the possibility of parole for the murder, 25 years to life for the conspiracy, and three years in state prison for the attempted escape. It stayed the conspiracy sentence pursuant to section 654. A different panel of this court affirmed Moyer's original conviction. (*Moyer*, *supra*, C019477.)

In 2022, Moyer filed a petition for resentencing under section 1172.6. The trial court found his conspiracy to commit murder conviction was not eligible for relief under section 1172.6 citing *People v. Whitson* (2022) 79 Cal.App.5th 22, 34, appointed counsel, and set a briefing schedule.

Based solely on the allegations of the information and the jury verdicts, the trial court denied the petition, finding the "record of conviction does not show that the defendant was convicted under a felony murder theory or a theory under the natural and probable consequences doctrine, but rather was found by the jury to have acted with the intent to kill; therefore, as to both counts, the Petitioner is ineligible for relief as a matter of law and the Court does not find a prima facie showing has been made." Moyer timely appealed in April 2024. His opening brief was filed in August 2024.

In January 2025, we asked the parties for supplemental briefing on the following question: "If this court were to conclude the trial court erred in finding defendant failed to make a prima facie showing of entitlement to relief under Penal Code section 1172.6 based solely on the trial court's analysis of the complaint and the jury verdicts, was that error prejudicial in light of entire record of conviction?" In response, Moyer relied on his opening brief and did not file any other briefing. We granted the People's motion to incorporate by reference as a motion to augment the record, which included the jury instructions, the jury verdict forms, and the reporter's transcript of the jury's verdict. This matter became fully briefed on March 26, 2025.

As to aiding and abetting, the trial court instructed the jury as follows: "The persons concerned in the commission of a crime who are regarded by law as principals in the crime thus committed and equally guilty thereof include: [¶] 1. Those who directly

5

and actively commit the act constituting the crime, or [¶] 2. Those who aid and abet the commission of the crime." (CALJIC No. 3.00.) "A person aids and abets the commission of a crime when he or she, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing, encouraging, or facilitating the commission of the crime, by act or advice aids, promotes, encourages or instigates the commission of the crime." (CALJIC No. 3.01.)

On the subject of conspiracy, the trial court instructed the jury with CALJIC No. 6.10, which provides in relevant part: "A conspiracy is an agreement entered into between two or more persons with the specific intent to agree to commit the public offense of Murder or Insurance Fraud and with the further specific intent to commit such offenses, followed by an overt act committed in this state by one or more of the parties for the purpose of accomplishing the object of the agreement. Conspiracy is a crime. [¶] In order to find a defendant guilty of conspiracy, in addition to proof of the unlawful agreement and specific intent, there must be proof of the commission of at least one of the overt acts alleged in the information. It is not necessary to the guilt of any particular defendant that defendant personally committed the overt act, if he was one of the conspirators when such an act was committed." The trial court did not instruct the jury on felony murder or murder under the natural and probable consequences doctrine.

As to murder, the trial court instructed the jury with CALJIC No. 8.10: "Every person who unlawfully kills a human being with malice aforethought is guilty of the crime of murder in violation of Section 187 of the Penal Code. [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A human being was killed. [¶] 2. The killing was unlawful, and [¶] 3. The killing was done with malice aforethought." Finally, on the special circumstance allegations, the trial court instructed the jury with CALJIC No. 8.80.1 (Special Circumstances—Introductory) and CALJIC No. 8.81.1 (Special Circumstances—Murder for Financial Gain).

6

The introductory instruction stated: "If you find the defendant in this case guilty of murder of the first degree, you must then determine if the following special circumstance is true or not true: that the murder was committed for financial gain. [¶] . . . [¶] If you find that a defendant was not the actual killer of a human being, or if you are unable to decide whether the defendant was the actual killer or an aider and abettor or co-conspirator, you cannot find the special circumstance to be true as to that defendant unless you are satisfied beyond a reasonable doubt that such defendant with the intent to kill aided, abetted, or assisted any actor in the commission of the murder in the first degree." (CALJIC No. 8.80.1.) As to murder for financial gain, the trial court instructed the jury: "To find that the special circumstance, referred to in these instructions as murder for financial gain, is true, each of the following facts must be proved: [¶] 1. The murder was intentional, and [¶] 2. It was carried out for financial gain, and [¶] 3. The defendant believed the death of the victim would result in the desired financial gain." (CALJIC No. 8.81.1.)

DISCUSSION

Under *Delgadillo*, we must "evaluate the specific arguments presented in [Moyer's supplemental] brief," but we are not compelled to undertake an "independent review of the entire record to identify unraised issues." (*People v. Delgadillo*, *supra*, 14 Cal.5th at p. 232.) We proceed accordingly.

We start with Moyer's argument he established a prima facie case for relief under section 1172.6.[4] The record of his conviction proves he did not.

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as

---

[4] Moyer also mentions the delay from the time he filed his brief in 2022 to the time the motion was denied in 2024, but he offers no argument as to how this may have affected the merits of the trial court's decision.

7

it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) In addition, and as relevant here, the enactment of Senate Bill No. 1437 altered the substantive law of murder by imposing a new requirement for murder convictions, "a principal in a crime shall act with malice aforethought" to be convicted of murder. (§ 188, subd. (a)(3).) "Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Ibid.*)

Senate Bill No. 1437 also added what is now section 1172.6, which allows "those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief." (*People v. Gentile* (2020) 10 Cal.5th 830, 843.) Section 1172.6, subdivisions (b) and (c) create a process for evaluating a petitioner's eligibility for relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 960-962.) The trial court must determine whether the petition is facially sufficient under section 1172.6, subdivision (b). (*Lewis*, at p. 960.) If the petition is facially sufficient, the court follows section 1172.6, subdivision (c), appointing counsel (if requested), and issuing a briefing schedule set forth in the statute. (*Lewis*, at p. 966.) Following the completion of this briefing, the court holds a hearing to determine whether a petitioner has made a prima facie showing that he or she is entitled to relief. (*Ibid.*)

As our Supreme Court explained, "[w]hile the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section 117[2.6] relief, the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' [Citations.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without

8

first conducting an evidentiary hearing.' [Citations.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971.)

We independently review the trial court's decision to deny a section 1172.6 petition for resentencing at the prima facie stage. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.) Here, a review of the record of conviction, including the information, the jury instructions and verdict forms, demonstrates Moyer is ineligible for relief as a matter of law. As it relates to his conviction for conspiracy, section 1172.6 has no application to convictions for conspiracy to commit murder. (*People v. Whitson*, *supra*, 79 Cal.App.5th at p. 34.)

As to Moyer's murder conviction, the trial court did not instruct the jury on either felony murder or the natural and probable consequences doctrine. Rather, the trial court instructed the jury on the elements of murder: that a human being was killed, the killing was unlawful, and the killing was done with malice aforethought. The trial court also instructed the jury on the basic principles of aider and abettor liability.

More importantly, the trial court instructed the jury on the special circumstance allegation that the murder was committed for financial gain. The preliminary instruction for that special circumstance required the jury to find either Moyer was the actual killer, or if he was not, that Moyer, "with the intent to kill aided, abetted, or assisted any actor in the commission of the murder in the first degree." (CALJIC No. 8.80.1.) Thereafter, the jury found Moyer guilty of first degree murder and found this special circumstance allegation the murder was committed for financial gain true. Thus, the jury's findings conclusively demonstrate that it determined Moyer was either the actual killer or, if he was not the actual killer, acted with the intent to kill his wife. Either of these findings precludes Moyer from making a prima facie showing of eligibility under section 1172.6. (*People v. Harden*, *supra*, 81 Cal.App.5th at pp. 59-60 [actual killer ineligible for relief

9

under § 1172.6]; *People v. Estrada* (2022) 77 Cal.App.5th 941, 945 [an aider and abettor with intent to kill ineligible for resentencing].)  Although the trial court did not analyze the case through this lens, we affirm the trial court's ruling as we review the result, not the trial court's rationale.  (*People v. Turner* (2020) 10 Cal.5th 786, 807.)

In his supplemental brief, Moyer also argues he could not have had the requisite intent to kill for financial gain because his name was not on the insurance policy as the beneficiary and no one knew whether the victim had passed her medical examination.  He also questions the effectiveness of his counsel in this regard and challenges his appellate counsel's actions and conclusion he is ineligible for relief as ineffective assistance.

As to the factual finding Moyer had the requisite intent to kill and his attorney's effort at his initial trial, Moyer may not attempt to relitigate the jury's factual findings and raise trial errors in his appeal from the denial of his section 1172.6 petition.  "The mere filing of a section [1172.6] petition does not afford the petitioner a new opportunity to raise claims of trial error . . . .  The purpose of section [1172.6] is to give defendants the benefit of amended sections 188 and 189 with respect to issues not previously determined, not to provide a do-over on factual disputes that have already been resolved." (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947.)

As to his challenge to his appellate counsel, to establish a claim of ineffective assistance of counsel, a defendant must prove that (1) counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) the deficiency resulted in prejudice to him.  (*People v. Mai* (2013) 57 Cal.4th 986, 1009; *Strickland v. Washington* (1984) 466 U.S. 668, 687-688.)

The lack of prejudice alone defeats Moyer's contention of ineffective assistance. (*Strickland v. Washington*, *supra*, 466 U.S. at p. 697 ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed"].)  To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694.)

Here, as we have already concluded, the trial court did not err in denying Moyer's petition because he was ineligible for relief as a matter of law based on the jury's special circumstance finding he was the actual killer or he was a direct aider and abettor who had the intent to kill the victim. Further, because Moyer was not entitled to use this petition to relitigate the facts found by the jury, his appellate counsel's alleged failure to further investigate those facts, present them to this court, or offer Moyer an adverse opinion on them did not prejudice him, as there is no probability that the outcome—his ineligibility as a matter of law—would have been different.

DISPOSITION

The trial court's order denying Moyer's petition for resentencing under section 1172.6 is affirmed.

/s/<br>
BOULWARE EURIE, J.

We concur:

/s/
KRAUSE, Acting P. J.

/s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11