Filed 5/12/16  P. v. Hemphill CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067959 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCN318225) |
| MICHAEL HEMPHILL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert J. Kearney, Judge.  Affirmed.

Ronda G. Norris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor and Charles C. Ragland8, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Michael Hemphill guilty of first degree murder (Pen. Code,[1] § 187, subd. (a)) and found true that, in committing the murder, he intentionally and personally used and discharged a firearm, proximately causing the death of the victim (§§ 12022.5, subd. (a) & 12022.53, subds. (c) & (d)). The trial court found true that defendant had a prior serious felony conviction and a prior strike conviction (§ 667, subds. (a)(1) & (b)-(i)). The court sentenced defendant to state prison for 80 years to life.[2]

On appeal, defendant's sole argument is that the court abused its discretion and thus erred when it refused under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) to strike his prior serious felony conviction from 1981. We disagree and thus affirm the judgment of conviction.

---

[1]    All further statutory references are to the Penal Code.

[2]    The record shows at sentencing the court found the aggregate term for count 1 to be 75 years to life and then stated that, pursuant to section 667, subdivision (a)(1), the "court is required to add an additional 5 years consecutive, making the total commitment *85* years to life," instead of what should have been *80* years. Neither party raised this issue in their briefing. We realize the general rule is that the oral pronouncements of the court are presumed correct. (*People v. Mesa* (1975) 14 Cal.3d 466, 471.) Nonetheless, under these circumstances—in which the abstract of judgment, the probation report, and the minute order each show defendant was sentenced to 80 years to life, and when it appears the reference to 85 years was merely a simple mathematical error by the court— we deem the abstract of judgment and minute order to prevail over the reporter's transcript. (See *People v. Cleveland* (2004) 32 Cal.4th 704, 768 [concluding the "erroneous statement in the reporter's transcript [was] of no effect" when the abstract of judgment and minute order correctly showed defendant was not charged with a prior prison term under section 667.5, but rather only a prior serious felony conviction under section 667]; see also *People v. Smith* (1983) 33 Cal.3d 596, 599 [noting when the record is in conflict and cannot be harmonized, " 'that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence' "].)

FACTUAL SUMMARY[3]

Escondido Police Officer Russell Gay testified that on January 24, 2013, he responded to a location in Escondido where defendant was then living. Defendant had called police after the owner of the property (landlord) and victim Brandon Sanchez, who worked for the landlord, had allegedly tried to evict defendant from a trailer on the landlord's property. During Officer Gay's conversation with defendant, Sanchez approached and told Officer Gay that the landlord did not want defendant living on the property. Officer Gay advised Sanchez that if the landlord wanted to evict defendant, the landlord needed to go to court.

As the conversation continued, Officer Gay noted defendant became increasingly upset. According to Officer Gay, defendant then "kind of ball[ed] up his fists and kind of gets -- sticks out his chest like he's really getting irritated and assuming a posture like he wants to fight. [¶] [T]hey [Sanchez and defendant] are probably 10 feet apart at that point. [Defendant] takes a couple pretty quick steps directly at Mr. Sanchez like he wanted to fistfight with him." Officer Gay testified he warned defendant that if he started a fistfight in front of police, defendant was "probably going to get arrested." Officer Gay testified he advised Sanchez and defendant to handle the eviction in court and leave each other alone.

Witness Jose Espinoza testified that he and Sanchez had lived across the street from each other for about 10 years and that they were "good friends." About 6:00 p.m.

---

[3]    Given that defendant challenges only the court's refusal to strike his prior serious felony conviction, we only briefly summarize the facts.

on April 24, 2013, Espinoza, Sanchez and another friend went to the landlord's property so that Sanchez could water some plants in a nursery and do some other chores. Later that evening, when it was dark, Espinoza saw defendant come outside.

While standing about three or four feet away, defendant picked up a rake and started swinging it "side to side." At the same time, defendant kept saying to Sanchez that he was "tired of having all kinds of -- he was tired of all his ideas and all the people going over to the property." According to Espinoza, defendant was aggressive. In response, Sanchez told defendant to go back inside his trailer and leave them alone. Defendant dropped the rake and went inside his trailer.

A few minutes later, defendant came back outside and started arguing with Sanchez again. Espinoza described defendant's demeanor as aggressive, noting defendant was yelling loudly at Sanchez. During this tirade, Espinoza also noted defendant kept putting his hand behind his back "like he wanted to pull out something, but he wouldn't." Espinoza had also seen defendant put his hand behind his back when defendant initially came outside. Concerned defendant might pull out a weapon, Espinoza testified he told Sanchez "like, three times" that they should leave. According to Espinoza, Sanchez did not seem worried by defendant. Defendant then returned to his trailer.

Espinoza testified they next went into another trailer located on the property. When Espinoza went outside to retrieve Sanchez's jacket from a truck, defendant came outside a third time and, as before, began yelling. Sanchez, in response, came outside and sat on a wooden table. Espinoza heard defendant make comments about Sanchez's mother and father.

4

Espinoza testified that after Sanchez told defendant not to make comments about his mother and father, defendant replied, "I had enough of you," began walking toward Sanchez and, when defendant was about eight feet away, raised his right hand up to a 45-degree angle and shot Sanchez. Although Espinoza did not see the actual gun in the dark, he saw "a flame come out and smoke" and heard the gunshot. Sanchez next stood up, grabbed his stomach and said, "He shot me." Afraid he would be next, Espinoza ran to the street, flagged down a couple inside a car and asked them to call police and an ambulance because his "friend had been shot."

Escondido Police Officer Shannon Martin testified she transported defendant to the police station following his arrest for shooting Sanchez. During "processing" and while Officer Martin's body camera was recording, defendant spontaneously exclaimed, "Alright. I shot him. Okay? So we know that." When Officer Martin responded, "Okay," defendant added, "I should have shot him last time but you got there early." The record shows a video of this recording was played for the jury.

Deputy Medical Examiner Craig Nelson testified he performed the autopsy on Sanchez on April 26, 2013. Dr. Nelson testified Sanchez had an entrance wound on his right palm. Near that wound was soot and two small metallic particles, suggesting the victim was shot at close range. Dr. Nelson noted the victim had an exit wound on his palm and an entrance wound to the right side of his chest. Dr. Nelson testified the bullet next passed through one of the victim's ribs, through the right lung, through the heart, through the left lung and then through another rib before lodging just underneath his skin. Dr. Nelson opined the victim died rapidly from the bullet wound.

5

DISCUSSION

A. *Brief Additional Background*

The record shows before sentencing defendant moved under *Romero* to dismiss his serious prior conviction. Defendant contended that his serious prior conviction should be struck because it was remote, as it had occurred about 33 years before he shot Sanchez, and that since 1985, when he suffered "several misdemeanor convictions," he has not suffered any criminal conviction until the Sanchez shooting.

In opposing defendant's motion, the People argued defendant has led a continuous life of crime. In addition to the serious felony conviction in 1981, the People noted defendant was convicted in 1985 for giving false information to a police officer. In addition, that same year he was convicted of trespassing, resisting a police officer and giving false information to a police officer. Finally, defendant was arrested but not convicted in 2005 for damaging a phone line and domestic violence. Because the prior strike conviction also involved a shooting and the instant case involved a shooting leading to death, the People argued the court should decline to strike the 1981 serious felony prior.

At sentencing, the record shows the court carefully considered whether to strike the 1981 prior on the basis that conviction was 32 years ago, which it noted was a "substantial period of time." The court also noted that, while this was an important factor, it was not the only factor, stating:

"The court is also to look at the nature and circumstances of the present felony, the nature and circumstances of the prior strike, as well as, in particular, [defendant's]

6

background, character, and prospects. [¶] . . . [¶] The prior strike, though many years ago, also was an assault with a firearm where he apparently shot at two people. [¶] Given the severity of the new offense, the severity of the old offense, and the similarity of the offenses, I think that overcomes even the age of the prior conviction such that I don't find him to be deemed outside the scheme spirt. I don't find that the interest of justice would be served by striking the strike. [¶] I believe [defendant] is extremely dangerous, dangerous to the public, and charges were serious on both offenses. [¶] For those reasons, the court will not exercise its discretion under Romero."

B. *Guiding Principles and Analysis*

As the trial court recognized, in the furtherance of justice it may strike a prior serious and/or violent felony conviction allegation pursuant to section 1385, subdivision (a). (*People v. Williams* (1998) 17 Cal.4th 148, 161.) When deciding whether to strike a prior conviction, "the court in question must consider whether, in light of the nature and circumstances of his [or her] present felonies and prior serious and/or violent felony convictions, and the particulars of his [or her] background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he [or she] had not previously been convicted of one or more serious and/or violent felonies." (*Ibid.*)

"[A] defendant's sentence is also a relevant consideration when deciding whether to strike a prior conviction allegation; in fact, it is the overarching consideration because the underlying purpose of striking prior conviction allegations is the avoidance of unjust sentences." (*People v. Garcia* (1999) 20 Cal.4th 490, 500.) When a court rules on a

7

*Romero* motion, it must remain mindful that the purpose of the three strikes law is to provide greater punishment for recidivists. (*People v. Acosta* (2002) 29 Cal.4th 105, 127; § 667, subd. (b) [it is the intent of the Legislature in enacting section 667 to "ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses"].)

It is well settled that a trial court's denial of a motion to strike a prior felony conviction allegation is reviewed under the abuse of discretion standard. (*Romero*, *supra*, 13 Cal.4th at p. 530.) Therefore, it is not enough for a defendant "to show that reasonable people might disagree about whether to strike one or more of his [or her] prior convictions. Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 (*Myers*).) The burden is on the defendant " 'to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside[.]' " (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977–978; see *People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*) [noting a "trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it"].)

Here, it is clear from the record that the trial court was aware of its discretion to strike defendant's prior serious felony conviction, inasmuch as the court recognized that

8

32 years between his 1981 conviction and the shooting of Sanchez was a "substantial period of time." Nonetheless, the court also correctly concluded there were other factors to consider in determining whether to grant or deny defendant's *Romero* motion.

Specifically, the court noted that both in 1981 and in 2013, defendant used a gun to shoot at his victims. In addition, the record shows the court looked at the nature and circumstances of the current felony, which it noted involved the first degree murder of an unarmed man by use of a firearm. The court found the record "in this case support[s] the fact that the decision to kill Mr. Sanchez was calculated, needless, and unnecessary at the time." The court also found defendant was "extremely dangerous," a finding which also is supported by the record given defendant's behavior before the shooting and his statements afterward that he should have shot Sanchez "last time," when police were called out to the property. We thus conclude on this record that the court's decision not to strike defendant's prior serious felony was not "so irrational or arbitrary" to constitute an abuse of discretion. (See *Carmony*, *supra*, 33 Cal.4th at p. 377.)

That defendant disagrees with the court's decision following its proper exercise of discretion, or believes the court should have attached more weight to other factors in arguing his prior 1981 conviction should have been struck, is not the test on review. (See *Myers*, *supra*, 69 Cal.App.4th at p. 310 [noting when "the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance"].) In light of the seriousness of the instant crime and the court's finding defendant is "extremely dangerous," we conclude the court

9

properly found defendant's situation was not so extraordinary as to fall outside the spirit of the three strikes scheme.  (See *Carmony*, *supra*, 33 Cal.4th at p. 378.)

## DISPOSITION

The judgment of conviction is affirmed.


BENKE, Acting P. J.

WE CONCUR:


McDONALD, J.


IRION, J.