Filed 1/30/23  P. v. Wilson CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B315417 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA151540) |
| v. | |
| MARCUS WILSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sean D. Coen, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant Marcus Wilson was convicted of one count of first degree murder and one count of possession of a firearm by a felon. The jury also found that in committing the murder, Wilson personally and intentionally discharged a firearm thereby causing the victim's death within the meaning of Penal Code[1] section 12022.53, subdivision (d). Additionally, the jury found true firearm enhancement allegations under section 12022.53, subdivisions (b) and (c). The trial court sentenced Wilson to an aggregate prison term of 80 years to life, which includes a sentence of 25 years to life imposed pursuant to section 12022.53, subdivision (d). The court imposed, but stayed, a 10-year sentence mandated by section 12022.53, subdivision (b) and a 20-year sentence provided under subdivision (c) of that statute.

On appeal, Wilson claims the People failed to present sufficient evidence demonstrating that he was the individual who shot the victim. Wilson further claims the trial court erred in failing to consider whether to reduce the 25-year-to-life firearm enhancement to a lesser sentence provided under section 12022.53, subdivision (b) or (c), or under section 12022.5, subdivision (a).

Wilson's sufficiency of the evidence challenge fails because he asks us to reweigh the evidence; weighing evidence is a matter exclusively within the province of the factfinder. In particular, Wilson assails the credibility of a witness who testified that she saw a gun handle sticking out of Wilson's pants on the date of the murder, she overheard Wilson tell the victim that the victim owed Wilson money, she transported Wilson and the victim to the location at which the murder later occurred, and Wilson

---

[1] Undesignated statutory citations are to the Penal Code.

2

confessed to the murder. Because Wilson fails to establish that it was physically impossible for this witness to perceive these events or that this testimony is false on its face, Wilson's attempts to discredit her are not cognizable on appeal. Furthermore, other trial evidence corroborates aspects of this witness's testimony.

Wilson has not demonstrated the trial court failed to consider reducing the 25-year-to-life firearm enhancement under section 12022.53, subdivision (d) to a lesser sentence under subdivision (b) or (c) of that statute. On the date sentence was pronounced, case law established that the trial court had discretion to substitute these lesser sentence enhancements for the greater one so long as all the enhancement allegations were charged and found true by the jury, as was the case here. We presume that the trial court was aware of this discretion and considered whether to exercise it. Wilson has not overcome that presumption.

Lastly, we acknowledge there is a split of authority among Courts of Appeal regarding whether a trial court may impose an uncharged 3-, 4-, or 10-year enhancement under section 12022.5, subdivision (a) in lieu of a greater charged enhancement in section 12022.53. Regardless of whether the trial court had such authority, remanding to allow the court to consider whether to exercise that discretion would be futile, given that the court believed the nature and seriousness of the murder warranted the imposition of the 25-year-to-life enhancement.

Finding no reversible error, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

We summarize only those facts pertinent to our disposition of this appeal.

### 1. *The information and Wilson's not guilty plea*

On November 30, 2020, the People filed an information charging Wilson with one count of murder, in violation of section 187, subdivision (a); and one count of possession of a firearm by a felon, in violation of section 29800, subdivision (a)(1). In connection with the murder count, the People alleged firearm enhancements pursuant to section 12022.53, subdivisions (b), (c), and (d).

---

[2] Portions of our factual and procedural background and Discussion, part A, *post*, are derived from admissions made in the parties' appellate briefing and assertions the Attorney General makes in the respondent's brief to which Wilson does not respond in his reply. (See *Williams v. Superior Court* (1964) 226 Cal.App.2d 666, 668, 674 [criminal case in which the Court of Appeal stated: " 'An express concession or assertion in a brief is frequently treated as an *admission* of a legal or factual point, controlling in the disposition of the case.' "]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "]; *Reygoza v. Superior Court* (1991) 230 Cal.App.3d 514, 519 & fn. 4 [criminal case in which the Court of Appeal assumed that an assertion made by respondent was correct because the "defendant did not dispute respondent's claim in his reply"]; *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

On December 1, 2020, Wilson pleaded not guilty to both charged offenses.

## 2. *Brief overview of the People's case*[3]

At trial, the People called A.M. to the stand.[4] In January 2020, A.M. met Wilson through a friend. On January 29, 2020, A.M. drove Wilson to meet one of his friends, Stephen Meller. In the course of transporting Wilson, A.M. noticed that Wilson had a gun handle sticking out of his pants.

A.M. drove Wilson and Meller to several places that day. While she acted as a chauffeur for the two men, she overheard Wilson tell Meller that Meller owed Wilson money. That evening, at Wilson's request, A.M. transported Wilson and Meller to a location near a camper that was parked on 115th Street. A.M. parked and got out of her vehicle for a brief period. After she returned to her vehicle, she noticed that Wilson and Meller were no longer inside, and she heard three gunshots.

After A.M. heard the gunshots, she tried telephoning Wilson. Wilson later reappeared and told A.M. that they were leaving without Meller. A.M. and Wilson left the area in A.M.'s vehicle.

The People also called Oscar M. as a witness.[5] Martinez's residence was across the street from the shooting. At around 8:40 p.m. on January 29, 2020, Martinez, who at that time was

---

[3] Wilson did not call any witnesses at trial. We describe the trial evidence in greater detail in Discussion, part A, *post*.

[4] The remainder of this paragraph and the following two paragraphs summarize aspects of A.M.'s testimony.

[5] The remainder of this paragraph and the following paragraph summarize portions of Martinez's testimony.

outside in his driveway, heard three gunshots. Martinez saw a man run to a vehicle and enter the passenger side; the vehicle thereafter drove off.

Martinez noticed that someone was lying on the ground. Martinez approached the person, and asked if the individual was "okay"; Martinez received no response. Martinez contacted emergency services. The parties do not dispute that the person lying on the ground was Meller, or that after Meller was taken to the hospital, he died from gunshot wounds.

A.M. testified that at some point after the shooting, Wilson telephoned her. A.M. testified that during this call, Wilson told her that he " 'got into it' with [Meller]" and that " '[Wilson] had to shoot that fool.' "[6] A.M. testified that she asked Wilson why he shot Meller, but Wilson refused to discuss the matter further.

3. ***The jury's verdict, the trial court's sentence, and Wilson's notice of appeal***

The jury found Wilson guilty of first degree murder and possession of a firearm by a felon. The jury also found each of the firearm enhancements alleged under section 12022.53, subdivisions (b) through (d) to be true.

On September 28, 2021, the trial court sentenced Wilson to an aggregate prison term of 80 years to life. The sentence consists of a prison term of 25 years to life for the murder conviction, which the trial court doubled to 50 years to life pursuant to section 1170.12, subdivisions (a) through (d) and section 667, subdivisions (b) through (i), along with consecutive terms of imprisonment of 25 years to life pursuant to

---

[6] Wilson does not dispute A.M. testified that Wilson made these statements to her during the call.

section 12022.53, subdivision (d) and 5 years pursuant to section 667, subdivision (a)(1).[7]

The court also imposed, but stayed, a 10-year prison sentence pursuant to section 12022.53, subdivision (b) and a 20-year prison sentence pursuant to subdivision (c) of that statute. Additionally, the court imposed a 6-year prison sentence for the conviction for possession of a firearm by a felon, said sentence to be served concurrently with Wilson's 80-year aggregate prison sentence for the murder conviction.[8]

---

[7] Although the minute order for the sentencing hearing indicates the trial court "ordered [Wilson] to serve 25 years in state prison pursuant to . . . section 12022.5(d)," the reporter's transcript shows the court instead imposed a consecutive term of "25 years to life in state prison" "[p]ursuant to . . . section 12022.53[,] subdivision (d) . . . ." Because section 12022.53, subdivision (d) does authorize a 25-year-to-life prison term (see § 12022.53, subd. (d)) and section 12022.5 does not (see § 12022.5, subds. (a)–(f) [authorizing enhancements of 3, 4, or 10 years, or 5, 6, or 10 years]), we conclude the minute order's reference to section 12022.5 was a typographical error. (See *People v. Smith* (1983) 33 Cal.3d 596, 599 [" '[W]hen . . . the record is in conflict it will be harmonized if possible; but where this is not possible that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence[.]' "].) We further note the abstract of judgment identifies section 12022.53, subdivision (d) as the provision authorizing the consecutive sentence of 25 years to life in prison.

[8] In the respondent's brief, the Attorney General mistakenly claims that Wilson "was sentenced to a total of 81 years to life in prison." Although it is not entirely clear how the Attorney General arrived at that figure, it does appear the Attorney General overlooked the fact that Wilson's 6-year prison term for the firearm possession offense runs concurrent with the

Wilson timely appealed the judgment.

## DISCUSSION

### A. Wilson's Sufficiency of the Evidence Challenge to His Murder Conviction Fails

" 'In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 656–657.) In conducting this analysis, the reviewing court must "view[ ] all the evidence in the light most favorable to the prosecution, and draw[ ] all reasonable inferences in favor of the jury's findings." (See *People v. Perez* (2017) 18 Cal.App.5th 598, 607.) Under this deferential standard of review, " 'it is not a proper appellate function to reassess the credibility of the witnesses.' [Citation.]" (See *People v. Friend* (2009) 47 Cal.4th 1, 41 (*Friend*).)

"[W]e *must* begin with the presumption that the evidence of th[e] elements [of the offense] *was* sufficient, and the defendant bears the burden of convincing us otherwise. . . . [¶] . . . [A]n appellate court is 'not required to search the record to ascertain whether it contains evidence that will sustain [the defendant's]

sentence imposed for the murder conviction. The Attorney General also erroneously asserts the 5-year prison sentence imposed under section 667, subdivision (a)(1) was appended to Wilson's sentence for the firearm possession count, rather than to his sentence for murder.

contentions.'  [Citation.] . . . [¶] . . . [T]he defendant must set forth in his opening brief *all* of the material evidence . . . in the light most favorable to the People, and then must persuade us that evidence cannot reasonably support the jury's verdict."  (See *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573–1574 (*Sanghera*).)

Wilson asserts "there was insufficient evidence [he] was the actual shooter."  Wilson's principal contention is that "[A.M.]'s unreliable testimony combined with a grainy, barely visible surveillance video" that did not "definitively identif[y] a shooter," and "a knife found near the victim's person, [are] sufficient to introduce doubt on the part of a reasonable trier of fact as to the narrative the prosecutor presented to sustain conviction."  Wilson also complains that "[t]he presence of other people at the shooting was not investigated or pressed during questioning, . . . despite the importance of this issue to the question of who shot the victim."  Applying the deferential standard of review governing claims of insufficiency of the evidence, we reject each of these arguments for the reasons discussed below.

### 1.  *The jury was entitled to credit A.M.'s testimony*

Before addressing Wilson's challenges to A.M.'s credibility, we observe Wilson concedes A.M. testified that:  On January 29, 2020, she drove Wilson and Meller to a location near a camper parked on 115th Street; she later heard gunshots; and Wilson, but not Meller, returned to her vehicle thereafter.  Wilson also acknowledges A.M. testified that after the shooting, Wilson told her over the telephone that:  "[Wilson] 'got into it' with [Meller]" and " '[Wilson] had to shoot that fool.' "

Notwithstanding these concessions, Wilson insists that A.M. was "so thoroughly impeached that no trier of fact" could

have found her credible because her "testimony surrounding the events prior to and during the shooting was vague, inaccurate, and contradictory." Specifically, Wilson argues "[A.M.]'s statement [regarding] where she was when she heard the gunshots varied from inside the car, in the middle of the road, or outside the car while smoking marijuana." Further, Wilson asserts that A.M. "told detectives several versions of where [she and Wilson] went after the shooting, including to a Jack in the Box restaurant, and to a Casino," and that "neither of these [was] determined to be true and police found they actually went to Long Beach." Wilson also claims that A.M. "told two different stories" at trial regarding where she and Wilson went after the shooting, to wit, she first claimed "that they went to a mutual friend['s] . . . house in Long Beach, then changed her story to say they went to Jack in the Box." In addition, Wilson asserts A.M. had "indicated that there were one or more other people present at the shooting, such as [a person ]with whom she walked around in the street smoking marijuana, but this could not be corroborated in the video" surveillance introduced at trial.

" ' " 'To warrant the rejection [by an appellate court] of the statements given by a witness who has been believed by the [trier of fact], there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions.' " ' [Citation.]" (See *Friend*, *supra*, 47 Cal.4th at p. 41, first bracketed insertion added.) Under this standard, "impeachment arguments" that amount to nothing more than "simple conflicts in the evidence" do not warrant reversal of the judgment (e.g., the trial testimony "differed in some details from [the witness's] previous statements"). (See *id.* at pp. 40–41.)

10

In attempting to discredit A.M., Wilson identifies discrepancies that tend to undermine her trustworthiness but fall short of satisfying the insufficiency-of-the-evidence standard. Wilson's argument that A.M. made several different statements vis-à-vis her precise location at the time she heard the gunshots (i.e., in her car, in the middle of the road, or outside the car while smoking marijuana), does not demonstrate that it was physically impossible for her to hear the gunshots. For instance, Wilson does not claim that any of these locations was so far from the crime scene that no reasonable factfinder could infer she heard the gunshots. Nor does Wilson's argument establish, " ' " 'without resort[ ] to inferences or deductions' " ' " (see *Friend, supra,* 47 Cal.4th at p. 41), the falsity of the other inculpatory aspects of her testimony (e.g., A.M. saw a gun handle sticking out of Wilson's pants that day, A.M. overheard Wilson tell Meller that he owed Wilson money, and Wilson confessed to A.M. that he shot Meller).

Likewise, Wilson's claim that A.M. provided several inconsistent accounts about where she and Wilson went after the shooting does not establish that other portions of her testimony were physically impossible or false on their face. The same is true with respect to Wilson's assertion that surveillance footage undercuts A.M.'s claim that other individuals were "present at the shooting."

Thus, the jury was entitled to credit the portions of A.M.'s testimony indicating that Wilson shot Meller.

> ### 2. *Wilson's complaints regarding the surveillance video footage do not warrant reversal*

Although Wilson admits that People's exhibit 5 is "surveillance footage from Oscar M.'s home security camera,

11

which captured the shooting from across the street," Wilson asserts the video does not reveal the identity of the shooter or "the details of the shooting." In particular, Wilson contends this video "was made from a low quality home security camera at night, some distance across a poorly lit street, with the area of the shooting partially obscured by trees and a large tractor-trailer."

The Attorney General does not claim that the footage in People's exhibit 5 was clear enough to allow the jury to identify the shooter. Furthermore, the record before us does not contain any video evidence.[9] In any event, assuming arguendo this exhibit does not disclose the shooter's identity, other evidence discussed in this opinion links Wilson to the shooting.[10] For

---

[9] If Wilson wanted us to consider any of this surveillance footage, then he should have filed a notice of designation with the trial court to ensure that these exhibits were transmitted to us. (See Cal. Rules of Court, rule 8.320(e) ["Exhibits admitted in evidence, refused, or lodged are deemed part of the record, but may be transmitted to the reviewing court only as provided in rule 8.224."]; Cal. Rules of Court, rule 8.224(a)–(b) [specifying the procedure by which "a party wanting the reviewing court to consider any . . . exhibits" may file a notice of designation, thereby obligating the trial court clerk or a party in possession of the exhibits to "send them to the reviewing court"].) We have no record of him doing so.

[10] Wilson argues for the first time in his reply brief that "[i]t is unclear that the video [in People's exhibit 5] even portrayed a shooting . . . ." Wilson has forfeited this contention by failing timely to raise it. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 642–643 [concluding that a defendant had forfeited a contention by raising it for the first time in a reply brief].)

instance, as we explain in Discussion, part A.4, *post*, the People introduced evidence showing that Wilson's cellular telephone was in the vicinity of the crime scene at around the time the shooting occurred.

>   3.    *Wilson's arguments concerning the presence of a knife and other persons at the crime scene do not undermine the judgment*

Wilson contends that "a knife [was] found near the victim's person," "but law enforcement failed to collect it as evidence or document it in a police report."[11]  Wilson does not claim the presence of the knife at the scene would negate murder liability for shooting Meller (e.g., via self-defense).  Rather, he contends "a reasonable trier of fact could not have avoided doubt that [Wilson] *is the shooter . . . .*"  (Italics added.)  Furthermore, not only does Wilson acknowledge that a medical examiner testified Meller was killed by gunshots to the head and chest, but he also does not dispute the examiner's conclusion as to the cause of death.  Accordingly, Wilson fails to demonstrate the relevance of the knife to his challenge to the sufficiency of the evidence

---

[11]  In his opening brief, Wilson claims that "a knife was found *on the person of the victim*, but law enforcement failed to collect it as evidence or document it in a police report."  (Italics added.)  In the respondent's brief, the Attorney General correctly points out that the excerpts from Officer Augustin Hernandez's testimony that Wilson cites do not indicate the knife was on Meller's person, but instead show the officer saw a knife near Meller's clothing after paramedics had removed him from the crime scene.  Wilson ostensibly retreats from that position in his reply, asserting instead there was "a knife found near the victim's person . . . ."

supporting his murder conviction.  (See *Sanghera, supra,* 139 Cal.App.4th at p. 1573 [holding that a defendant "bears the burden of convincing us" that " 'the evidence is insufficient' " to support the verdict].)

Wilson further argues that even though A.M. "indicated that there were one or more other people present at the shooting, [including a person with whom A.M.] walked around in the street smoking marijuana, . . . [t]he presence of other people at the shooting was not investigated or pressed during questioning, nor were [A.M.'s smoking companion] or any others called as witnesses, despite the importance of this issue to the question of who shot the victim."

This argument is confusing.  Wilson seems to believe that "one or more other people" were not "present at the shooting" because he claims their presence "could not be corroborated in the video" presented at trial.  Yet, he faults the People for failing to investigate and present further evidence on that point.

In any event, the sheer possibility that other individuals were present when the shooting occurred falls short of demonstrating that no reasonable jury could credit the People's evidence tying Wilson to the shooting (e.g., A.M.'s testimony).  (See *People v. Misa* (2006) 140 Cal.App.4th 837, 842 ["In considering the sufficiency of the evidence, *we cannot reweigh the evidence,* as the credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact," italics added].)

### 4.      *Other evidence placed Wilson at the crime scene*

We observe that other evidence supports the jury's implied finding that Wilson was present at the crime scene when the shooting occurred.  Wilson admits that a homicide investigator

assigned to this case, Officer Issac Fernandez, testified that a cellular telephone "found at the scene of the crime . . . . was registered to" Wilson. Wilson further admits that an FBI special agent testified that telephone records show two cellular telephones "were in the vicinity of the crime scene around the time the crime occurred." Officer Fernandez testified that the number for one of those two telephones was registered to Wilson. A.M. testified that the other number corresponded to a telephone that belonged to her daughter, and that A.M. was using that telephone "around January 29th, 2020."

In sum, we conclude for the reasons provided above that a reasonable jury could have relied on A.M.'s testimony and the People's other trial evidence to find that Wilson shot Meller. Wilson thus fails to demonstrate there was insufficient evidence to support his murder conviction.

**B.    Wilson Fails to Demonstrate the Trial Court Erred In Declining To Reduce His Firearm Enhancement to a Lesser Enhancement Under Section 12022.53, Subdivision (b) or (c)**

Section 12022.53, subdivision (d) provides that any "person who, in the commission of a [murder], . . . personally and intentionally discharges a firearm and proximately causes . . . death . . . shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." (See § 12022.53, subd. (d); *id.*, subd. (a)(1) [including murder in the list of felonies subject to the enhancements imposed by § 12022.53].) Similarly, subdivision (b) imposes an additional and consecutive term of imprisonment of 10 years for any person who "personally uses a firearm" in the commission of a murder (see *id.*, subd. (b)), and subdivision (c) imposes an additional and

consecutive term of imprisonment of 20 years for any person who "personally and intentionally discharges a firearm" in the course of committing that offense (see *id.*, subd. (c)).

Section 12022.53, subdivision (h) confers upon trial courts the discretion to spare certain criminal defendants from sentencing enhancements provided in that section. That subdivision provides in pertinent part: "The court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." (§ 12022.53, subd. (h).) In turn, section 1385 provides that a trial court "may, . . . in furtherance of justice, order an action to be dismissed." (See § 1385, subd. (a).) The Legislature has recognized that in certain cases, section 1385 authorizes the trial court to "strike or dismiss an enhancement." (See § 1385, subd. (b)(1).)

Here, the People averred firearm enhancement allegations under section 12022.53, subdivisions (b), (c), and (d) in connection with the murder charge. The jury found each of these firearm enhancement allegations true. Further, in the course of imposing the 25-year-to-life enhancement under section 12022.53, subdivision (d), the trial court remarked: "I'm aware of my discretion pursuant to Penal Code section 12022.53 subdivision (h). I do not find it to be in the interest of justice to strike the gun enhancement in this matter based upon the seriousness of the crime and the nature of the crime." The court thereafter imposed, but stayed, the 10-year and 20-year prison terms authorized by section 12022.53, subdivisions (b) and (c), respectively.

Wilson maintains the court "failed to exercise the entire scope of its discretion [under section 12022.53,

16

subdivision (h)], . . . as it only considered *striking* the enhancements, but not *dismissing* [them] or *reducing*" the 25-year-to-life enhancement mandated by section 12022.53, subdivision (d) to the 10-year or 20-year enhancements provided in subdivisions (b) and (c), respectively. (Italics added.) Put differently, Wilson argues the court erred in failing to consider reducing his sentence for the firearm enhancement; he does not claim the law required the court to impose one of the lesser enhancements in lieu of the enhancement provided in subdivision (d).[12] Relatedly, Wilson raises an ineffective assistance of trial counsel claim, arguing that trial "[c]ounsel . . . did not object to the court's failure to exercise the full scope of its sentencing discretion concerning the firearm enhancements." Each claim of error fails for the reasons discussed below.

By the time Wilson was sentenced on September 28, 2021, case law recognized that if the People had averred, and the jury had found true, firearm enhancement allegations under

[12] Although Wilson suggests in his briefing the trial court also failed to consider whether to *dismiss* (as opposed to *strike*) the 25-year-to-life enhancement, he does not clarify in his briefing whether he believes there is any substantive difference between dismissing the firearm enhancement and striking it. (See also *People v. Tirado* (2022) 12 Cal.5th 688, 692, 696 (*Tirado*) [intimating that when a trial court exercises its authority under § 1385 and § 12022.53, subd. (h) to strike a firearm enhancement, it is "dismiss[ing a] part[ ] of an action"].) Wilson has waived this argument by failing to adequately develop it. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 (*Stanley*) [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' " "].)

section 12022.53, subdivisions (b), (c), and (d), then a court would have discretion to strike the 25-year-to-life enhancement provided under subdivision (d) and impose the 10-year enhancement from subdivision (b) or the 20-year enhancement from subdivision (c).[13]  Moreover, " '[s]cores of appellate decisions, relying on [Evidence Code section 664], have held that "in the absence of any contrary evidence, we are entitled to presume that the trial court . . . properly followed established law." ' [Citations.]"  (See *People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 662–663; see also Evid. Code, § 664 ["It is presumed that official duty has been regularly performed."].) Wilson does not direct us to any authority that obligated the trial court, upon imposing sentence, to state expressly that it had contemplated reducing the 25-year-to-life enhancement to a lesser one.  Accordingly, we cannot infer from the trial court's silence on this matter that it abdicated its responsibility to consider that option.  (Cf. *Abdelsalam*, at pp. 662–663 [presuming that the trial court properly employed the preponderance of the evidence standard in assessing the legality of a guilty plea in part because, although the court did not identify expressly the burden of proof it employed, the defendant failed to cite any authority that obligated the court to do so].)

---

[13]  (See, e.g., *People v. Wang* (2020) 46 Cal.App.5th 1055, 1089–1091 [rejecting the defendant's argument that the matter needed to be remanded to allow the trial court to decide whether to strike a firearm enhancement under § 12022.53, subd. (d) and impose a lesser one under subd. (b) or (c), given that all three enhancements were charged and found true by the jury, and the trial court was presumptively aware that "striking the enhancement under section 12022.53, subdivision (d) 'would leave intact the remaining findings' "].)

Wilson's claim of ineffective assistance of counsel " 'has two components:  A [defendant] must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.' [Citations.]" (*In re Gay* (2020) 8 Cal.5th 1059, 1073.) " '[T]o establish deficient performance, a [defendant] must demonstrate that counsel's representation "fell below an objective standard of reasonableness," ' as measured by ' "prevailing professional norms." ' [Citation.]  When applying this standard, we ask whether any reasonably competent counsel would have done as counsel did." (*Ibid.*)

We have already concluded earlier in this part that Wilson has not shown the trial court failed to consider whether to reduce the 25-year-to-life enhancement to a lesser one under section 12022.53, subdivision (b) or (c).  It follows that the ineffective assistance claim fails, given that trial counsel could not have rendered deficient performance by not objecting to a nonexistent sentencing error.  (Cf. *People v. Flowers* (2022) 81 Cal.App.5th 680, 683–684, fn. 3 [rejecting a defendant's claim that trial counsel rendered ineffective assistance by failing to object to the trial court's imposition of the upper term because the lower court's sentencing decision was not erroneous], review granted Oct. 12, 2022, S276237.)

In sum, we reject Wilson's claim that the trial court failed to consider whether to reduce his firearm enhancement to another enhancement under section 12022.53, subdivision (b) or (c), along with his related claim of ineffective assistance of trial counsel.

C.   **Wilson Is Not Entitled to an Order Remanding the Matter to the Trial Court To Consider Whether To**

**Reduce the Firearm Enhancement to a Lesser Enhancement Under Section 12022.5, Subdivision (a)**

Several months after the September 28, 2021 sentencing hearing, the Supreme Court issued an opinion that resolved a "split" among the Courts of Appeal by holding that a trial "court can strike [a] section 12022.53(d) enhancement and, in its place, impose a lesser enhancement under section 12022.53(b) or section 12022.53(c), even if the lesser enhancements were not specifically charged in the information or found true by the jury." (See *Tirado, supra*, 12 Cal.5th at pp. 688, 692, 696 [issued on Jan. 20, 2022].) Relying on the *Tirado* decision, several Courts of Appeal have held that a trial court has discretion to impose an uncharged lesser included enhancement under section 12022.5, subdivision (a) after striking a greater enhancement under section 12022.53.[14] (See *People v. Fuller* (2022) 83 Cal.App.5th 394, 397, 403 [Fourth Dist., Div. Two], review granted Nov. 22, 2022, S276762; *People v. Johnson* (2022) 83 Cal.App.5th 1074, 1080, 1088 [Third Dist.], review granted Dec. 14, 2022, S277196.) At least one Court of Appeal arrived at the opposite conclusion in a published decision. (See *People v. Lewis* (2022) 86 Cal.App.5th 34, 36, 39, 41 [Fifth Dist.].) On September 28, 2022, the Supreme Court granted review of an unpublished Court of Appeal decision that likewise concluded that a trial court lacks such authority. (See *People v. McDavid*

---

[14] As relevant here, section 12022.5, subdivision (a) provides: "[A]ny person who personally uses a firearm in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for 3, 4, or 10 years, unless use of a firearm is an element of that offense." (See § 12022.5, subd. (a).)

(July 14, 2022, D078919) [nonpub. opn.], review granted
Sept. 28, 2022, S275940.)

Wilson argues, "[T]he [trial] court did not exercise the full
scope of its discretion with regard to [Wilson's] firearm
enhancements, which would have allowed [the court] to strike,
dismiss, or reduce the [section] 12022.53 enhancement[ ], and
impose . . . [a] lesser uncharged enhancement[ ] under
section 12022.5," subdivision (a).[15]  As we discuss in greater
detail below, we decline to resolve this issue because, even if the
trial court had discretion to impose a section 12022.5,
subdivision (a) enhancement in lieu of the section 12022.53,
subdivision (d) enhancement, Wilson would still lack entitlement
to appellate relief on this claim of error.[16]

---

[15]  The presiding justice granted the parties leave to submit
supplemental briefing on this issue.  Moreover, although Wilson
seems to suggest the trial court also should have contemplated
reducing the 25-year-to-life firearm enhancement to a lesser
uncharged enhancement provided under a statute other than
section 12022.5, subdivision (a), he does not identify explicitly
any other statutory provision the court ought to have considered.
Accordingly, Wilson waives this argument. (See *Stanley*, *supra*,
10 Cal.4th at p. 793.)

[16]  In advancing this appellate claim, Wilson notes in
passing that the current version of section 1385 provides that as
a general rule, "if '[t]he application of an enhancement could
result in a sentence of over 20 years' in prison, 'the enhancement
shall be dismissed.' " (Quoting § 1385, subd. (c)(2)(C).)  Although
Wilson claims this statutory text "is indicative of the
Legislature's intent to allow nuanced downward adjustments to
an offender's total sentence by adjusting the enhancements," he
does not claim this subdivision of section 1385 applies to the
instant case.  We note that the Legislature expressly stated

21

" 'Defendants are entitled to "sentencing decisions made in the exercise of the 'informed discretion' of the sentencing court," and a court that is unaware of its discretionary authority cannot exercise its informed discretion.' [Citation.]" (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425 (*McDaniels*).) Accordingly, as a general rule, " '[w]hen the record shows that the trial court proceeded with sentencing on the . . . assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] . . . .' [Citation.]" (See *ibid.*) Nevertheless, if "the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken a firearm enhancement[,]" " ' "then remand would be an idle act and is not required." ' [Citation.]" (See *ibid.*)

In this case, we already concluded the trial court had decided not to substitute a firearm enhancement under section 12022.53, subdivision (b) or (c) for the enhancement imposed by subdivision (d) thereof. (See Discussion, part B, *ante*.) In declining to strike the subdivision (d) enhancement and impose a reduced incarceration period provided in section 12022.53, subdivision (b) or (c), the trial court remarked: "I do not find it to be in the interest of justice to strike the gun enhancement [under section 12022.53, subdivision (d)] in this matter based upon the seriousness of the crime and the nature of the crime." Thus, the trial court believed the nature and seriousness of the murder perpetrated by Wilson counseled

---

subdivision (c) of section 1385 "appl[ies] to all sentencings occurring *after January 1, 2022*." (See § 1385, subd. (c)(7), italics added.) Wilson was sentenced on September 28, 2021.

against reducing the 25-year-to-life firearm enhancement under section 12022.53, subdivision (d) to a 10-year or 20-year enhancement under subdivision (b) or (c) of that statute. (See § 12022.53, subds. (b)–(d) [imposing firearm enhancements of 10 years, 20 years, and 25 years to life, respectively].) A fortiori, the court "clearly indicated" it would not have decreased the section 12022.53, subdivision (d) enhancement to one under section 12022.5, subdivision (a) that is lower than those authorized by subdivisions (b) and (c), to wit, a term of 3, 4, or 10 years. (See *McDaniels*, *supra*, 22 Cal.App.5th at p. 425; § 12022.5, subd. (a).) Because remanding the matter to the trial court for resentencing would be " ' "an idle act" ' " (*McDaniels*, at p. 425), we decline to do so.

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED.


BENDIX, J.


We concur:


ROTHSCHILD, P. J.


WEINGART, J.


24