Filed 11/16/23  P. v. Valdez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HUGO VALDEZ,<br><br>    Defendant and Appellant. | B322392<br><br>(Los Angeles County<br>Super. Ct. Nos. BA469165,<br>LA085432, PA086980) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Michael Terrell, Judge.  Reversed, in part, and remanded with directions.

Jeffrey Manning-Cartwright and John L. Staley, under appointment by the Court of Appeal, for Plaintiff and Respondent.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Stephan D. Mathews and Gary A.

Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## I.     INTRODUCTION

Defendant Hugo Valdez appeals from the trial court's judgment sentencing him to prison following revocation of probation in three separate cases.  We reverse, in part, affirm, in part, and remand with directions.

## II.     PROCEDURAL BACKGROUND

A.     *Three Probation Cases*

    1.     PA086980 (the theft case)

On July 11, 2017, following defendant's plea of nolo contendere to grand theft in violation of Penal Code section 487, subdivision (a)[1] in the theft case, the trial court suspended imposition of sentence and placed defendant on formal probation for three years with certain terms and conditions, including that he obey all laws and orders of the court.

_____

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

2.    LA085432 (the ammunition case)

On November 15, 2017, following defendant's plea of nolo contendere to unlawful possession of ammunition in violation of section 30305, subdivision (a)(1) in the ammunition case, the trial court suspended imposition of sentence and placed defendant on formal probation for three years with certain terms and conditions, including that he obey all laws and orders of the court.

3.    BA469165 (the fraud case)

On September 4, 2018, defendant pleaded guilty in the fraud case to aid by misrepresentation (over $950) in violation of Welfare and Institutions Code section 10980, subdivision (c)(2). The trial court suspended imposition of sentence and placed defendant on formal probation for five years on the condition that he, among other things, obey all laws and orders of the court, perform 425 hours of community service, and pay $25,812 in restitution.

B.    *Probation Violation* (*the drug case*)

On December 26, 2019, Los Angeles police officers arrested defendant for transportation of a controlled substance in violation of Health and Safety Code section 11379.

C.    *Probation Revocation Proceedings*

1.    <u>Hearings Before Commissioner Harris</u>

On December 31, 2019, the trial court in the fraud case—Commissioner H. Elizabeth Harris, presiding—held a hearing on defendant's "possible violation" of his probation in that case. The court noted that although charges had not been filed in the drug case, the probation officer had placed a "no-bail hold" on defendant until March 10, 2020, when defendant was scheduled to appear for a progress hearing. The court advised defendant that it would keep the March 10 hearing date on calendar, reminded him that he owed 425 hours of community service, reinstated his probation, and ordered him to make progress on his community service hours before the next hearing. The court then released defendant on his own recognizance.

On January 29, 2020, the Los Angeles County District Attorney filed charges against defendant in the drug case (PA094112).

On February 26, 2020, at defendant's request, Commissioner Harris held another hearing. Defendant's counsel explained that he requested the hearing because defendant now had a new case pending and counsel anticipated that a "no-bail hold" warrant would have issued for defendant, who was on probation. According to counsel, defendant wished to act preemptively "to address the court regarding the progress [defendant had] made on this case. We were hoping that the court would violate and reinstate him on this case."

In response to counsel's suggestion, the trial court queried, "Why would I violate him?", and counsel replied, "Because he got

4

a new case." The court then explained: "Ours is a little different matter. . . . [¶] . . . [¶] . . . [T]his particular group of crimes, we're not interested in locking [defendant] up. We're interested in getting $29,000 from him, which he probably doesn't have, but he can start making payments on those and show a good-faith effort." The court clarified that it was "aware of [the drug case] and [it would] not violate [defendant] based upon it. And if they say they want our case, tell them that it is a special rule that on the welfare fraud cases, we keep our cases. [¶] . . . [¶] Unless they're going to give him prison on it, then I'll send it to them. But other than that, we keep our cases because we have to keep track of the accounting. He has to keep paying [restitution]."[2]

### 2. Hearings Before Commissioner Harkavy

On March 3, 2020, the trial court—Commissioner Jeffrey Harkavy, presiding—held a hearing on "possible viol[ations] of probation" in the theft and ammunition cases. Defendant's counsel advised the court that defendant "would like to plead not guilty" in the drug case. According to counsel, once defendant learned that a case had been "filed here," he retained private counsel, became "proactive," and appeared before Commissioner Harris "both to surrender [defendant] and also address any probation hold issues;" and "she allowed him to proceed on his own recognizance . . . ."

---

[2] The minute order for the February 26, 2020, hearing provided that the "court does not find . . . defendant in violation of probation" and set a progress hearing on restitution for September 2, 2021.

Commissioner Harkavy then sought to clarify whether Commissioner Harris made an order that defendant "remain free on his own recognizance" or whether "he was just not tak[en] into custody in order to be here in this court today for this court to decide on the bail issue." In response, defendant's counsel suggested that the court could "verify that Commissioner Harris did just release [defendant] for all purposes of addressing this case, but she made it clear on the record that the purpose of her courtroom was to make sure that [defendant] stay[ed] out [of custody] so he can continue with the terms of his probation and that she was not issuing any kind of hold."

Commissioner Harkavy indicated that he would accept counsel's representations and reasoned that "a defendant [is] entitled to . . . one bail review hearing, absent a change in circumstances, and from [defense counsel's] representation, that sound[ed] like that hearing took place, that a decision was made by another bench officer that he be O.R. on his probation matters and this court feels bound by that decision [made] by that other judge. [¶] Normally, I would be remanding him on [a] no bail hold on all three probation violations, but since a hearing, from [defense counsel's] representation, took place and it was not the order of the court to simply have him be O.R. so he can appear in court and for this court to decide the bail issue on the probation matters, but, rather, affirmatively for reasons stated, ordered that [defendant] remain free on his own recognizance to appear here in court with full knowledge that . . . criminal charges had been filed. [¶] This court feels bound to the decision of a co-equal bench officer from the same jurisdiction to uphold those orders by another judge of the Los Angeles [County] Superior Court."

6

Commissioner Harkavy next entered a not guilty plea in the pending drug case and ordered a pre-plea report. The court then scheduled the matter for a probation violation setting, bail review, and progress hearing for April 7, 2020. The court also scheduled April 7, 2020, for a preliminary hearing setting in the drug case.

The minute order in the fraud case for the March 3, 2020, hearing noted as follows: "The court requests that the above matter [the fraud case] be ordered and placed on calendar as a potential probation violation. Department 47 [Commissioner Harris] is contacted and will not allow the above matter [the fraud case to] be released. On February 26, 2020, Department 47 was notified regarding . . . defendant's new case number PA094112 [the drug case] and did not find defendant in violation." The minute orders in the theft and ammunition cases stated, "Probation revoked."

At the April 7, 2020, hearing on probation violation setting, bail review, and preliminary hearing setting in the drug case, Commissioner Harkavy explained: "I think we can take the bail review off calendar in light of the new bail schedule. This would be an O.R. release on everything." The minute orders in the theft and ammunition cases for that hearing stated, "Probation remains revoked." and the minute order in the fraud case for that hearing stated, "Probation revoked."

D. *Probation Violation Proceedings*

    1.    <u>Motions to Terminate Probation</u>

On January 10, 2022, the trial court—Judge Michael Terrell, presiding—held a hearing on: (1) defendant's request to terminate probation in the theft and ammunition cases under Assembly Bill No. 1950 (2019–2020 Reg. Sess.) (AB 1950); and (2) his alternative request, in the event the court did not terminate probation, that the formal probation violation hearing in those two cases be held after the jury trial in the drug case. The court noted that defendant's probation in the theft and ammunition cases had been revoked on March 3, 2020, and probation in the fraud case was revoked on April 7, 2020. It therefore concluded that defendant "was in revoked status at the time that [AB] 1950 went into effect." Citing the Supreme Court's decision in *People v. Leiva* (2013) 56 Cal.4th 498 (*Leiva*), the court denied defendant's motion to terminate probation and his request that the probation violation hearing be held following the jury trial in the drug case.

On April 6, 2022, at a pretrial conference in the drug case, Judge Terrell addressed defendant's renewed request to terminate probation on all three cases based on recent case law and defendant's assertion that probation in the three cases had not been validly revoked. On the issue of whether probation had been revoked, the court acknowledged the discrepancy between the minute orders for the March 3 and April 7, 2020, hearings— which provided that probation had been revoked—and the transcripts of those hearings—which did not include a statement that probation had been revoked. The court conceded that

Commissioner Harkavy did not say "the words 'probation is revoked,'" as recited in the minute order, but then pointed to the commissioner's discussion of bail and ensuing statement that "'[n]ormally I would be remanding him on all three of these probation violations.'" The court reasoned, "you don't set bail or you don't leave someone on O.R. unless you revoke his probation. If probation was never revoked, there would be no discussion of bail . . . ."

Judge Terrell then analyzed the April 7, 2020, hearing transcript, explaining, "Commissioner Harkavy again does not mention or does not say the words 'probation revoked,' but this was on calendar initially for [a] bail review [hearing], and what Commissioner Harkavy says [is]: [¶] 'I think we can take the bail review off calendar in light of the new bail schedule. This would be an O.R. release on everything.' [¶] . . . [¶] You don't make orders releasing someone on a probation case unless you violate probation, so I think that that can be harmonized . . . with the [April 7] minute order that says probation has been revoked."

Following argument by the parties, Judge Terrell ruled: "Let me just state clearly for the record that this court after doing its analysis finds that the probation matters that [defendant] had when [the drug] case was filed, that those were revoked on March 3rd, or for the [fraud] case, at the latest on April 7th. In any event, they were revoked before AB 1950 went into effect and that per [*Kuhnel v. Superior Court* (2022) 75 Cal.App.5th 726, review granted June 1, 2022, S274000 (*Kuhnel*)], this court has jurisdiction over the probation violation matters. [¶] So this court is going to reaffirm its January 10th decision to deny . . . defendant's motion to terminate probation . . . ." The court set

9

the matter for a probation violation hearing on May 12, 2022, and confirmed that probation remained revoked until then.

### 2. Violation Hearing

At the May 12, 2022, probation violation proceeding, defendant admitted that he was in possession of a controlled substance in violation of Health and Safety Code section 11366.8, and the trial court (Judge Terrell) therefore found him in violation of probation because he had failed to obey all laws.

On the issue of whether defendant should be remanded into custody pending the probation violation sentencing hearing, the trial court explained: "The court tries to be consistent in how it deals with probation violations, and when someone is in violation for committing a crime as opposed to some technical violation, it's the court's standard practice to always have some custody time imposed. What that custody time is I'm not going to decide until I hear from both counsel, but it's essentially a hundred percent of the time I impose custody time. [¶] But when someone is found in violation, even if I don't sentence on the day of the finding, the court's standard practice is to remand pending the sentencing date, and I don't see a reason to deviate from that. I try to be consistent. [¶] . . . [¶] Okay. So I'm going to be consistent with what I typically do with violations, I'm going to order that he be remanded and that we have a sentencing date on Monday . . . ." Defense counsel then asked if the court would consider bail in lieu of a custody remand, and the court replied, "As I said, . . . this is the kind of situation where the court almost a hundred percent of the time imposes a custody sentence, so there is no

reason . . . not to start that now because he's already been found in violation."

E.    *Sentencing*

At the May 16, 2022, sentencing hearing, following argument from the parties, the trial court first addressed whether probation should be reinstated, explaining: "These are always difficult decisions to make because it's not a clear-cut, black-and-white type situation, but I need to look at what the purpose of probation is. [¶] The purpose of probation is to . . . give a person an opportunity to try to straighten things out and get on track and prove to the court and to the community as a whole that he or she is going to stay free of problems. [Defendant] has been given multiple chances to do that and has not been able to do it. [¶] Given his criminal history, I do not think that he's earned yet another chance. I think that reinstating probation, given the overall history here, is not supported by the record. [¶] Now, the court, at least in my opinion, cannot consider things like immigration consequences. I don't think I can treat Person A and Person B differently because one has immigration issues and one does not. That's not fair. I'm not going to consider that. [¶] I'm also not going to consider the issue of community labor and community service. There have been no admissions of a violation here. We had a hearing. The [prosecution] did not present any evidence at that hearing of failure to do community labor or community service or pay restitution, so I'm making my decision based on what was proven up at the hearing, and what was proven was possession of methamphetamine. [¶] The court, though, is going to consider

11

the criminal history and the fact he's been given numerous chances to do what probation is designed to do, which is get on track, stay on track, and prove to everyone he can do that. He's not done that, and I don't think he's earned yet another shot at probation, so the court's decision is to find him in violation for the misdemeanor offense and to terminate probation on all three cases."

On the appropriate sentence to impose for the violations, the trial court reasoned as follows: "Now, the next question is, what's the appropriate sentence? [The prosecutor] was arguing for a grand total of 32 months: 16 months on whatever the principal case is, plus eight months consecutive, plus eight months consecutive, for 32 months. [¶] As I said before, this is not an open-and-shut issue. There's a lot of gray here. I think the 32 months is too much. In the court's view, the appropriate sentence would be two years, which is the mid-term on the principal, and then the other two would be concurrent." The court ordered that defendant serve his sentence in prison and added, "I know this is not the decision that [defendant] or his family wanted, but I think I have to look at the totality of [the] circumstances. I think that it's the appropriate solution, given the total record that I've been presented." Following pronouncement of sentence, the court dismissed the drug case.

## III.  DISCUSSION

### A.  *Revocation of Probation in the Grand Theft and Ammunition Cases*

Defendant contends that AB 1950 requires reversal of his sentences in the theft and ammunition cases.  According to defendant, the statute operated retroactively to limit his probation in those cases to two years.  Because the alleged violation and revocation both occurred more than two years after the grant of probation, defendant concludes that the trial court lacked jurisdiction to find a violation and impose sentence.

AB 1950 codified at section 1203.1 and enacted effective January 1, 2021, reduced the maximum probationary term for most felonies from five years to two years.  (*People v. Jackson* (2023) 93 Cal.App.5th 207, 210, review granted, Sept. 13, 2023, S281267.)  We consider here the extent of the retroactive application of the statute, that is, whether under these circumstances it operated to deprive the trial court of jurisdiction to find a violation and sentence defendant.  The parties agree there is a split in authority on the issue;[3] but they disagree on which of those cases controls the result here.

---

[3]    The Supreme Court has granted review in several cases dealing with related retroactivity issues under AB 1950: Compare *People v. Faial* (2022) 75 Cal.App.5th 738, review granted May 18, 2021, S273840 (*Faial*); *Kuhnel, supra,* 75 Cal.App.5th 726; *People v. Butler* (2022) 75 Cal.App.5th 216, review granted June 1, 2022, S273773; *People v. Canedos* (2022) 77 Cal.App.5th 469, review granted June 29, 2022, S274244 (*Canedos*); *People v. Jackson, supra,* 93 Cal.App.5th 207.

Defendant urges us to follow *Canedos, supra*, 77 Cal.App.5th 469, in which the court held that AB 1950 operated retroactively to deprive the trial court of jurisdiction over the probation violation there, which defendant committed more than two years after the court granted probation, but before the effective date of AB 1950. The court in *Canedos* explained, "[W]e see no principled basis for denying retroactive relief to defendants in Canedos's position. Although Canedos had violated the terms of his probation before [AB] 1950 became effective, neither the trial court's finding of a violation nor his original conviction was yet final for purposes of retroactivity under [*In re*] *Estrada* [(1965) 63 Cal.2d 740]. [Citations.] Unless the Legislature specifies otherwise, it is a matter of 'presumed legislative intent' that an ameliorative criminal statute applies retroactively to all defendants whose convictions were not yet final when the law became effective. [Citation.] We see no indication in the text or legislative history of [AB] 1950 that the Legislature meant to limit its retroactive application. Under the new law, Canedos's probation expired in 2018, more than a year before he committed the violation. Thus, the court no longer had the authority to revoke Canedos's probation and sentence him to prison." (*Id.* at p. 473–474.)

The Attorney General asserts that the issue is controlled by, among others, the decision in *Faial, supra*, 75 Cal.App.5th 726 in which the court held that AB 1950 did not apply when the revocation of probation occurred after defendant had served two years of his probationary term, but before the effective date of the statute. (*Id.* at p. 746.)

Our Supreme Court will resolve the conflict in the authorities. In the meantime, we agree the result in *Canedos,*

14

*supra*, 77 Cal.App.5th 469 should obtain here because defendant committed the offending conduct more than two years after the court granted probation but before his sentence had been executed following revocation and termination of his probation. We therefore reverse the sentences in both cases.

B.      *Revocation of Probation in the Fraud Case*

Defendant maintains that the sentence in the fraud case should also be reversed because:  (1) Commissioner Harris ordered that probation in that case should not be revoked, and Commissioner Harkavy thus had no authority to overrule that order;[4] (2) because there was no valid summary revocation, his probationary period was not tolled (see § 1203.2, subd. (a)[5]); *Leiva, supra*, 56 Cal.4th at p. 505); (3) under AB 1950, that period expired in September 2020, two years after it was granted; and (4) the trial court therefore had no jurisdiction to hold the formal violation hearing in the fraud case on May 12, 2022.

"Section 1203.3, subdivision (a), empowers the trial court 'at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence.' . . . [¶]  Under section 1203.2, the court is authorized to summarily revoke a defendant's probation "'if the interests of

---

[4]      Defendant assumes, for this argument only, that Commissioner Harkavy issued an order in April 2020 revoking defendant's probation in the fraud case.

[5]      Under section 1203.2, subdivision (a), an order summarily revoking probation "shall serve to toll the running of the period of supervision."

justice so require and the court . . . has reason to believe from the report of the probation officer or otherwise" that grounds for revocation exist. (§1203.2, subd. (a).) Such summary revocation gives the court jurisdiction over and physical custody of the defendant and is proper if the defendant is accorded a subsequent formal hearing in conformance with due process.'" (*Leiva, supra*, 56 Cal.4th at pp. 504–505.)

As a general rule, one trial judge cannot reconsider and overrule an order of another trial judge. (*People v. Riva* (2003) 112 Cal.App.4th 981, 991.) We disagree, however, with the premise of defendant's argument, namely, that Commissioner Harkavy overruled an order made by Commissioner Harris. On February 26, 2020, Commissioner Harris stated that she would not revoke defendant's probation in the fraud case and released him on his own recognizance so he could fulfill the conditions of his probation, including making restitution. She also refused to release that case to the court handling the drug case because her court needed to track and account for the restitution payments defendant was making. But she expressly conditioned her orders on whether the court in the drug case decided to "give [defendant] prison on it," in which case, she would "send [the fraud case] to them."

Given this background, Commissioner Harkavy's order revoking defendant's probation in the fraud case did not "overrule" Commissioner Harris's decision to release defendant without revoking probation. By conceding that the court handling the drug case could send defendant to prison in the fraud case and agreeing to release that case for that purpose, Commissioner Harris tacitly acknowledged that her orders were not intended to preclude the court handling the drug case from

16

revoking defendant's probation in the fraud case. Commissioner Harris therefore never reached the issue of whether there was reason to believe from the probation officer's report or otherwise that grounds for revocation existed, choosing instead to leave that decision to the court handling the drug case.

## C.     *Failure to Expressly State Probation Revoked*

Defendant also argues probation was not revoked in the fraud case because Commissioner Harkavy did not orally pronounce that he was revoking probation at either the March 3 or April 7, 2020, hearings, and instead deferred to Commissioner Harris's ruling releasing defendant on his own recognizance in the fraud case. As defendant reads the record, probation was therefore never validly revoked.

In *People v. Smith* (1983) 33 Cal.3d 596, the court addressed how an appellate court should resolve conflicts between a trial court's oral pronouncements and its written records of the proceeding. "The People claim that the quoted excerpts from the reporter's and clerk's transcripts are in conflict, and maintain that the inconsistency must necessarily be resolved in favor of the reporter's version. [Citation.] But more recent cases do not support such a mechanical rule. The correct approach is outlined in the following passage from *In re Evans* (1945) 70 Cal.App.2d 213, 216: 'It may be said . . . as a general rule that when, as in this case, the record is in conflict it will be harmonized if possible; but where this is not possible that part of the record will prevail, which, because of its origin and nature or otherwise, is entitled to greater credence [citation]. Therefore whether the recitals in the clerk's minutes should prevail as

17

against contrary statements in the reporter's transcript, must depend upon the circumstances of each particular case.' [Citations.]" (*Id*. at p. 599.)

Here, the reporter's transcripts and corresponding minute orders from the relevant hearings demonstrate that the oral proceedings can be harmonized with the minute order expressly stating that Commissioner Harkavy revoked probation in all three cases. At the March 3, 2020, hearing, Commissioner Harkavy noted that defendant was currently on probation on all three cases and explained that, but for Commissioner Harris's order releasing defendant, he would have remanded him into custody on a "no bail hold" based on the three violations. But, due to the prior order releasing him, Commissioner Harkavy did not retain defendant in custody. He did, however, set the next hearing for a "probation violation hearing setting" and a bail review. Those orders demonstrate that the trial court handling the drug case had decided to go forward with formal violation and sentencing proceedings in the probation matters. The court would not have pronounced such a schedule unless it had first summarily revoked probation, as both the bail review and the formal violation hearing follow from such revocation. (See *Leiva, supra*, 56 Cal.4th at p. 505 ["'[A]fter the summary revocation, the defendant is entitled to formal proceedings for probation revocation. The purpose of the formal proceedings is not to revoke probation, as the revocation has occurred as a matter of law; rather, the purpose is to give the defendant an opportunity to require the prosecution to prove the alleged violation occurred and justifies revocation'"].)

Moreover, at the April 7, 2020, hearing, Commissioner Harkavy took the bail review off calendar and ordered "an O.R.

18

release on everything," that is, on all three probation matters. Those orders also were consistent with and logically follow a summary revocation in all three cases.

In light of the record, we conclude that the transcripts of the oral proceedings on the revocation issue can be harmonized with the court's written records showing that probation had been revoked. We therefore reject defendant's contention that the trial court lacked jurisdiction to proceed with the formal violation hearing and sentencing in the fraud case.

D.    *Modification of Sentence in the Fraud Case*

Defendant contends that, if we reverse his sentences in the theft and ammunition cases, but affirm his sentence in the fraud case, his remaining sentence, if any, must be served in county jail. According to defendant, if the two sentences requiring state prison incarceration under section 669, subdivision (d) are reversed, that section no longer controls and the remaining crime, the fraud offense, can only be punished by a county jail sentence. The Attorney General concurs.

We agree with the parties and will therefore remand with directions to modify defendant's sentence on the charge in the fraud case to reflect that any remaining time shall be served in county jail.

E.    *Abuse of Sentencing Discretion*

Defendant next contends that the trial court abused its discretion by expressly declaring "a policy of *not* considering alternatives to incarceration when, as here, a formal probation

19

revocation hearing results in a finding of a new law violation." According to defendant, the court "effectively ruled [defendant's request for reinstatement of probation] out of bounds even before the sentencing hearing and did not consider it . . . ."

"A probation violation does not automatically call for revocation of probation and imprisonment. [Citation.] A court may modify, revoke, or terminate the defendant's probation upon finding the defendant has violated probation. (§ 1203.2, subds, (a), (b)(1).) The power to modify probation necessarily includes the power to reinstate probation. [Citations.] Thus, upon finding a violation of probation and revoking probation, the court has several sentencing options. [Citation.] It may reinstate probation on the same terms, reinstate probation with modified terms, or terminate probation and sentence the defendant to state prison. [Citations.] [¶] . . . [¶] The decision whether to reinstate probation or terminate probation (and thus send the defendant to prison) rests within the broad discretion of the trial court. [Citations.]" (*People v. Bolian* (2014) 231 Cal.App.4th 1415, 1420–1421.)

Contrary to defendant's assertion, the trial court did not announce a "blanket" sentencing policy under which it never considered the option of reinstating probation following a finding of a new law violation. The court's comments about imposing a prison sentence "essentially" or "almost" a 100 percent of the time following such a finding were not made at the sentencing hearing; they were made at the end of the May 12, 2022, violation hearing, in the context of rejecting defendant's request for release pending the sentencing hearing. At the sentencing hearing, the court addressed the option of reinstating defendant's probation before deciding to sentence him to prison. The record therefore

20

demonstrates that the court understood its sentencing options, including the option of reinstatement, and then decided based on the circumstances of this case—including defendant's criminal record and inability to comply with the terms of three prior probationary grants—not to reinstate probation. Moreover, that the trial court in this case, as it had in the vast majority of other cases, imposed a custodial sentence for a probationer who had committed a new crime, is not "a very extreme case [where] an appellate court [should] interfere with the discretion of the trial court . . . ." (*People v. Urke* (2011) 197 Cal.App.4th 766, 773.) We find no abuse of discretion.

## IV.  DISPOSITION

The judgment in the theft and ammunition cases is reversed and remanded with directions to vacate defendant's sentences in those cases and to modify his sentence in the fraud case to reflect that any remaining period of incarceration shall be served in county jail.  The trial court is directed to amend the abstract of judgment to reflect this modification and to send the amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

BAKER, Acting P. J.

MOOR, J.

22